IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JON HOAK, ANTHONY FANO, and ALLAN QUICK, on behalf of themselves and all those similarly situated, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| ANDREA LEDFORD; COMPENSATION AND HUMAN RESOURCE COMMITTEE OF NCR CORPORATION BOARD OF DIRECTORS; NCR CORPORATION; and the PLAN ADMINISTRATOR OF THE PLANS OF NCR CORPORATION, | : : : : : : : : : | CIVIL ACTION NO. 1:15-CV-03983-AT |
| Defendants. | : | |

## **ORDER**

Plaintiffs have brought this Employee Retirement Income Security Act "ERISA" class action on behalf of former participants in six of Defendant NCR's "top hat[1]" retirement plans, challenging the adequacy of benefits paid under the plans. NCR sponsored the plans, promising its executives that they would receive monthly or bi-weekly payments for the remainder of their lives upon retirement from the company. After NCR received a purchase offer from AT&T, and in order

---

[1] According to Defendants, top hat plans provide deferred compensation "to a select group of management or highly compensated employees," 29 U.S.C. § 1051 (2), and are subject to certain provisions of ERISA, but are paid out of general company revenues and do not qualify for favored tax treatment. (Mot. to Dismiss, Doc. 12-1 at 7.)

to protect its employees' retirement benefits, the NCR Board of Directors agreed to establish Trusts controlled by an independent Trustee if there was any change or potential change in control of NCR. However, later under new management, NCR amended the plans, secretly terminated the trusts, and replaced the plans' trustee with an NCR executive. NCR then terminated the plans, stopped making annuity payments, and instead made single lump sum payments to all participants, improperly discounting the actuarial value of the benefits contrary to the terms of the plans. NCR also changed the definition of "Eligible Spouse" under the plans to eliminate the accrued benefits of spouses who were married to participants when they retired but who later divorced. Plaintiffs filed suit seeking a declaration that NCR breached its agreements, applied an unreasonable discount rate to devalue its employees' benefits, and improperly eliminated eligible spouse benefits, and an order requiring NCR to pay its employees and their spouses in accordance with the terms of the plans.

Before the Court is the partial Motion to Dismiss [Doc. 12] of Defendants Andrea Ledford ("Ms. Ledford"), Compensation and Human Resource Committee of NCR Corporation Board of Directors ("the Committee"), NCR Corporation ("NCR"), and the Plan Administrator of the Plans of NCR Corporation. The Court's ruling is set forth below.

# I.    BACKGROUND FACTS[2]

NCR provided retirement benefits to some of its high level executive employees by sponsoring an IRS qualified retirement plan ("the NCR Pension Plan) and six nonqualified plans:[3] the NCR Senior Executive Retirement, Death and Disability Plan ("SERP"); the Retirement Plan for Officers of NCR ("Plan for Officers"); the NCR Nonqualified Excess Plan ("Excess Plan"); the NCR Mid-Career Hire Supplemental Pension Plan ("Mid-Career Plan"); the NCR Supplemental Pension Plan for AT&T Transfers ("AT&T Transfer Plan"); and the NCR Officer Plan ("Officer Plan")—collectively referred to as "the nonqualified plans/the plans." (Compl. ¶ 15.)    SERP and the Plan for Officers designated the NCR Board of Directors as Plan Administrator. (*Id.* ¶ 35.)  The Excess Plan, Mid-Career Plan, AT&T Transfer Plan, and the Officer Plan designated NCR as Plan Administrator. (*Id.* ¶ 36.)

Plaintiffs Anthony Fano ("Mr. Fano") and Allan Quick ("Mr. Quick") were participants in SERP. (*Id.* ¶¶ 9, 11.)    Plaintiff Jon Hoak ("Mr. Hoak") was a

---

[2] The Court derives the factual background herein from Plaintiffs' Complaint and attachments thereto, as well as Exhibits A, B, C, D, and E to Defendants' Motion to Dismiss.  Exhibits A, B, and C to the Motion to Dismiss comprise the administrative record for Mr. Fano, Mr. Hoak, and Mr. Quick, respectively. Exhibit D to the Motion to Dismiss is the Officer Plan, and Exhibit E, the AT&T Transfer Plan.  *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ( "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").  Under those standards, the Court considers Exhibits A, B, C, D and E to Defendants' Motion to Dismiss because Plaintiffs refer to the administrative record (*Id.* ¶¶ 72–76.), and both the Officer Plan and AT&T Transfer Plan (*Id.* ¶ 15) in their Complaint, and all such documents are central to Plaintiffs' claims.

[3] Each of NCR's plans were governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 and 1002. (Compl. ¶ 12.)  However, the qualified NCR Pension Plan offered certain tax deferral benefits not afforded by the nonqualified "top hat" retirement plans.  (*See id.* ¶ 16.)  The NCR Pension Plan is not at issue in this case.  Plaintiffs only challenge the amendments to, and termination of, the *nonqualified* plans.

participant in the Plan for Officers, Excess Plan, Mid-Career Plan, and AT&T Transfer Plan. (*Id.* ¶ 10.)   None of the named Plaintiffs were participants of the NCR Officer Plan (not to be confused with the Retirement Plan for Officers).

Upon retirement from NCR, the plans entitled participants to lifetime annuities based on their compensation and years of service.  (*Id.* ¶ 17.)   The plans also provided for surviving eligible spouses to be paid a portion of participants' annuities following the participants' death.  (*Id.* ¶ 19.)   Eligible spouses were defined to be those spouses married to participants on the date their plan benefits commenced.  (*Id.*; *see also, e.g.,* Plan for Officers, Compl. Ex. A. Art. I, Doc. 1-1 at 40 ("Spouse" means the spouse of a Participant who was legally married to the Participant on the date payment of the Participant's benefits commence hereunder."); SERP, Comp. Ex. B. Art. I, Doc. 1-2 at 22 ("Eligible Spouse" means the spouse to whom the Participant is married on the date the Participant's benefit payments under the Plan commence.")).

Each plan permitted NCR to amend or terminate the plans, provided such actions did not "adversely affect" any participant's or spouse's accrued benefits or benefits payable under the plans.  (*Id.* ¶ 23.)   In the event NCR terminated the plans, all plans other than SERP expressly required participants' lump sum benefits to be calculated using the actuarial assumptions of the NCR Pension Plan.  (*Id.* ¶ 21.)   SERP was silent on how the amounts of such payments were to be determined.  (*Id.* Ex. B.)

Two of the nonqualified plans, SERP and the Plan for Officers, also provided that in the event of a potential or actual change in control at NCR, NCR would create a trust and appoint an independent trustee to safeguard the plans' assets.  (*Id.* ¶ 27.)  Moreover, the trustee would make all final determinations on benefit appeals.  (*Id.* ¶ 29.)  In November 1991, AT&T tendered an offer for NCR and the trust and trustee provisions were effectuated.  (*Id.* ¶¶ 32,33.)

On or about October 23, 2012, NCR amended SERP and the Plan for Officers, effective retroactively as of December, 31, 2008.  (*Id.* ¶ 39.)  The amendments eliminated the trust and trustee, and shifted authority to the Committee, the newly designated Plan Administrator, to rule on all administrative claims and appeals for benefits.  (*Id.* ¶¶ 40, 42, 48, 54.)  In addition, the Committee delegated its authority to amend SERP and the Plan for Officers to Defendant Andrea Ledford, NCR's Senior Vice President and Chief Human Resources Officer.  (*Id.* ¶ 43.)

On February 25, 2013, the Committee voted to terminate the nonqualified plans and to pay all participants lump sum amounts.  (*Id.* ¶ 68.)  The lump sums were calculated by reducing the value of participants' annuities to their present value using a 5% discount rate.  (*Id.*)  Plaintiffs allege that the lump sums they received were significantly less than the amounts they were entitled to under the plans.  (*Id.* ¶ 78.)  Plaintiffs sought recompense by filing administrative claims with the Plan Administrator.  (*Id.* ¶ 72.)  Mr. Hoak mistakenly filed his claim under SERP, a plan which he did not participate in.  (Mot. to Dismiss Ex. B.)  The

Administrator denied all of Plaintiffs' claims, including Mr. Hoak's, without correcting his error regarding the wrongly identified plan. (*Id.*) Subsequently, the Plaintiffs filed administrative appeals, all of which were denied. (Compl. ¶ 76.) In denying their appeals, the Administrator informed all the Plaintiffs that "[p]ursuant to ERISA, upon receiving this appeal denial you have now exhausted the Plan's procedures described in the Benefit Claims Procedures for the NCR Nonqualified Pension Plans." (Mot. to Dismiss Exs. A, B, C.)

Accordingly, Plaintiffs allege that they have exhausted their administrative remedies, and have filed a proposed class action seeking to represent all "participants, former participants, and spouses or eligible spouses" in Defendants' nonqualified plans. (Compl. ¶ 81.) Plaintiffs have filed a Complaint alleging three claims against Defendants. Count 1 alleges that NCR breached its agreement with Plaintiffs with respect to SERP and the Plan for Officers by improperly removing the trustee and eliminating the trusts. Count 2 alleges the 5% discount rate used to calculate the lump sum termination payments was improper. Count 3 alleges NCR erroneously interpreted the terms "spouse" and "eligible spouse" in the plans, thereby depriving participants' spouses of accrued benefits.

## II.   LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal

theory.  5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true.  *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  Plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.   DISCUSSION

Defendants move to partially dismiss Plaintiffs' claims on five grounds. First, Defendants move to dismiss all claims regarding any plan other than SERP as a result of Plaintiffs' failure to exhaust their administrative remedies with respect to those plans (i.e. the Plan for Officers, Excess Plan, Mid-Career Plan, AT&T Transfer Plan, and Officer Plan.)  Second, Defendants argue that Andrea Ledford, NCR's Compensation and Human Resource Committee, and NCR must be dismissed as parties because they are not the proper defendants under ERISA. Third, Defendants assert that Count I must be dismissed as a matter of law, because NCR's amendment of the plans to eliminate the plans' trust and trustee

was merely procedural and did not "adversely affect" Plaintiffs' accrued benefits. Fourth, Defendants argue that Plaintiffs' claim in Count II challenging the discount rate used by NCR to calculate the lump sum payments should be narrowed by dismissing Plaintiffs' allegation that SERP required the actuarial assumptions of the NCR Pension Plan to be used in calculating termination benefits. Finally, Defendants move to dismiss Count III, arguing both that Plaintiffs lack standing and failed to exhaust their administrative remedies with respect to their eligible spouse claim. The Court addresses the five grounds for Defendants' motion to dismiss in turn.

### 1. Exhaustion of Remedies with respect to the non-SERP plans

Of the named Plaintiffs, only Mr. Hoak participated in the Plan for Officers, Excess Plan, Mid-Career Plan, and AT&T Transfer Plan.[4] However, Mr. Hoak mistakenly identified only SERP, a plan which he did not participate in, during the administrative process. Because each Plaintiff based their administrative claims solely on SERP, Defendants argue Plaintiffs failed to exhaust their administrative remedies with respect to the five other nonqualified plans. Essentially, Defendants ask the Court to look beyond the sufficiency of Plaintiffs' pleadings and determine whether in fact Plaintiffs satisfied the exhaustion requirement for any non-SERP plans.[5] Plaintiffs do not directly rebut

---

[4] None of the named Plaintiffs allege that they participated in the Officer Plan.
[5] Defendants appear to concede that Plaintiffs did exhaust their administrative remedies with respect to SERP, with two exceptions: (1) Plaintiffs' allegation that SERP required the actuarial assumptions of the NCR Pension Plan to be used in calculating lump sum termination benefits;

Defendants' exhaustion position but rather respond that Defendants *treated* SERP and the five other plans collectively during both the termination and administrative process. For example, Defendants decided to terminate all nonqualified plans and use a 5% discount rate for all the plans in a single meeting. (Compl. Ex. J.) Moreover, Defendants notified plan participants of the termination decision in a single letter. (*Id.* ¶ 70.) Accordingly, Plaintiffs argue they were not required to exhaust their remedies with respect to each individual plan. Plaintiffs also argue that Defendants have already had ample opportunity to consider Plaintiffs' claim that the lump sum termination benefits they received were inadequate. Thus, requiring further administrative review would be futile.

The Eleventh Circuit has consistently held that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. *See, e.g.*, *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000); *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). The rationales behind this administrative exhaustion requirement include "reducing the number of lawsuits under ERISA, providing a nonadversarial method of dispute settlement, providing uniformity of results within a company, and minimizing [the] cost of dispute settlement." *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992).

District courts may excuse the exhaustion requirement "where resort to an administrative scheme is unavailable or would be "futile," or where the remedy

and (2) Plaintiffs' eligible spouse claim in Count III. Both exceptions are discussed further below.

would be 'inadequate.'" *Perrino*, 209 F.3d at 1318. These exceptions are narrowly construed and should only be used when "requiring a plaintiff to exhaust an administrative scheme would be an empty exercise in legal formalism." *Id.* District courts have sound discretion in deciding whether an exception applies and its decision shall be upheld absent abuse of discretion. *Springer*, 908 F.2d at 899.

Defendants appear to presume that Plaintiffs must *prove* exhaustion at the motion to dismiss stage. However, the Eleventh Circuit has only expressly required plaintiffs to properly *plead* exhaustion to survive dismissal. *See Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992) (affirming dismissal of plaintiff's claims when she "did not allege anything about whether she pursued any available relief under the claims procedures terms of [defendant's] employee benefits plan"); *Variety Children's Hospital v. Century Medical Health Plan, Inc.*, 57 F.3d 1040, 1042 n. 2 (11th Cir.1995) (finding that plaintiff's complaint that merely alleged plaintiff had complied with "all conditions precedent" did not fulfill the exhaustion pleading requirement under ERISA); *see also In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1354 (holding that plaintiffs' allegations in the complaint that they had followed the administrative appeals process to its conclusion were sufficient to satisfy the pleading requirement); *accord Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402-03 (7th Cir. 1996) (finding allegations in plaintiff's complaint that exhaustion was excused sufficient at the motion to dismiss stage, reasoning that exhaustion could be more

aptly assessed at the summary judgment stage "on records significantly more plenary than the one before us in this case."). In *Managed Care*, the court declined to make any additional determination that the exhaustion requirement had in fact been satisfied, explaining "[*a*]*t this stage of the proceedings* these allegations are sufficient. It is simply too early to determine whether the allegations raised in the Complaint, if true, are sufficient to satisfy the exhaustion of administrative remedies under ERISA." *Id.* (emphasis added).

To properly plead exhaustion, plaintiffs must specify both the action they took to exhaust their administrative remedies, and the outcome of that action. *Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, No. 10-81589-CIV, 2011 WL 2134534, at *8 (S.D. Fla. May 27, 2011); *see also Variety Childrens Hospital*, 57 F.3d 1040, 1042 n.2 (11th Cir. 1995) (simply alleging compliance with "all conditions precedent" is insufficient). Here, Plaintiffs allege that: (1) they filed timely administrative claims objecting to elimination of the trusts, the amount of the lump sum benefits they received, and the interpretation of the terms "Spouse" and "Eligible Spouse"; (Compl. ¶ 72); (2) the Plan Administrator denied Plaintiffs' claims and informed them of their right to file administrative appeals; (*Id.* ¶ 73); (3) Plaintiffs filed timely appeals; (*Id.* ¶ 74); and (4) the Plan Administrator denied those appeals in their entirety (*Id.* ¶ 76.) Based upon these allegations, the Court finds that Plaintiffs have sufficiently pled that they satisfied the exhaustion requirement.

Even if the Court were required at the motion to dismiss stage to determine whether Plaintiffs in fact exhausted their administrative remedies, Plaintiffs make a persuasive argument that they satisfied this requirement. At the time Plaintiffs filed their administrative claims, all plans had the same plan administrator[6] and were "subject to uniform provisions and procedures for plan administration, benefit claims and appeals." (*Id.* ¶ 51.) Moreover, Plaintiffs allege that Defendants made no attempt to distinguish the nonqualified plans during either the termination or administrative process. Even when Mr. Hoak filed his administrative claim and subsequent appeal disputing the adequacy of the lump sum[7] *under the wrong plan*, the plan administrator appeared to fully consider his claim, writing both a three page and seven page denial letter. (Mot. to Dismiss Ex. B.) Thus, the Court finds any attempts now by Defendants to emphasize differences between the plans in order to foreclose judicial review a little disingenuous, particularly given the plan administrator's letter to each Plaintiff denying their administrative appeals, stating "you have now exhausted the Plan's procedures described in the Benefit Claims Procedures for the NCR Nonqualified Pension Plans."[8]

---

[6] *See infra* Section 2.

[7] It appears, although the record is not clear, that participants in multiple plans, such as Mr. Hoak, received one lump sum payment covering all plans, rather than separate payouts for each plan. If this was indeed the case, such participants may have been able to exhaust their administrative claim regarding the adequacy of their received payment without needing to individually name each plan encompassed therein. The Court could more aptly make such a determination at the summary judgment stage on a record more developed than the one currently before it.

[8] The Court is not persuaded by cases cited by Defendants. In those cases cited where a motion to dismiss was granted, plaintiffs had either failed to pursue an administrative remedy at all, or

Alternatively, even if Plaintiffs failed to exhaust their administrative remedies with respect to all nonqualified plans, the Court concludes that requiring further administrative review would be futile. Mr. Hoak has already gone through two rounds of administrative procedure, giving Defendants ample opportunity to consider his claim that his lump sum termination payment was inadequate. Requiring him to go back now and engage in further administrative review would be an "empty exercise in legal formalism."[9] Thus, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' claims for failure to exhaust administrative remedies with respect to the Plan for Officers, Excess Plan, Mid-Career Plan, and AT&T Transfer Plan.

---

failed to follow the administrative process to its conclusion. *See, e.g.*, *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) (dismissal was appropriate when plaintiff failed to seek administrative review as mandated by the plan); *Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, No. 10-81589-CIV, 2011 WL 2134534, at *7–8 (S.D. Fla. May 27, 2011) (granting dismissal when plaintiffs failed to allege they "followed the appeals process to its conclusion or were otherwise prevented from doing so"). Defendants also cite *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, for the proposition that participants in multiple ERISA plans must independently exhaust remedies for *each* plan before filing suit. However, *Response Oncology* involved claims under 46 ERISA plans, with different plan administrators and employers. *Id.* at 1059. Moreover, the claims did not arise from the same transaction or occurrence. *Id.* Thus, the Court finds *Response Oncology* inapplicable to the materially different facts in this case.

[9] Moreover, if a claimant *reasonably* interprets the plan as allowing him to file suit without exhausting his administrative remedies, and consequently he fails to exhaust those remedies, he should not be barred from pursuing his claim in court. *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1209–10 (11th Cir. 2003). The plan administrator denied Mr. Hoak's administrative appeal without correcting the error that the claim was filed under a plan in which he did not participate in. Upon denial of the claim, the administrator informed Mr. Hoak that any further action in connection with the wrongly identified plan could only be brought in the United States District Court for the Northern District of Georgia. The Court finds that Mr. Hoak could *reasonably* interpret the administrator's consideration of his claim, the administrator's failure to correct the error, and his instructions to Mr. Hoak to pursue any further action in district court, as excusing the exhaustion requirement as to plans he actually participated in. Thus, this Court finds that he should not now be barred from pursuing his claims as to the Plan for Officers, Excess Plan, Mid-Career Plan, and AT&T Transfer Plan in court.

With respect to the NCR Officer Plan, Plaintiffs contend they can maintain a claim despite the fact that none of the named plaintiffs participated in that plan, relying on a case from the Sixth Circuit holding that "[a]n individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998). However, the Eleventh Circuit requires exhaustion of administrative remedies and "this requirement applies to actions in which the plaintiff sues individually as well as actions where the plaintiff sues as a representative of a putative class." *In re Managed Care Litig.*, 298 F. Supp. 1259, 1295 (S.D. Fla. 2003) (citing Perrino, 209 F.3d at 1315 (applying exhaustion requirement to a class action)). Thus, at least one named plaintiff must have been a participant under a plan in order to bring a claim under the plan in a representative capacity. Defendants' Motion to Dismiss Plaintiffs' claims under the NCR Officer Plan is therefore **GRANTED** and Plaintiffs' claims under that plan are **DISMISSED WITHOUT PREJUDICE.** *See Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006) (dismissing unexhausted ERISA claims without prejudice).

### 2. Whether Andrea Ledford, NCR's Compensation and Human Resources Committee, and NCR are the proper defendants in this case

Plaintiffs filed this lawsuit against four Defendants: NCR Corporation ("NCR"), the Compensation and Human Resource Committee of NCR

Corporation Board of Directors ("the Committee"), Andrea Ledford ("Ms. Ledford"), and the Plan Administrator of the Plans of NCR Corporation ("the Plan Administrator"). Plaintiffs allege that NCR, the employer, was the Plan Administrator of the Excess Plan, the Mid-Career Plan, AT&T Transfer Plan, and the Officer Plan. (Compl. ¶ 36.) Following the October 2012 amendments, Plaintiffs allege that the Committee, a subset of NCR's board of directors, became Plan Administrator of SERP and the Plan for Officers. (*Id.* ¶ 40.) The 2012 amendments also delegated authority to amend SERP and the Plan for Officers to Ms. Ledford, NCR's Senior Vice President and Chief Human Resources Officer. (Compl. ¶ 43.) Plaintiffs also name as a Defendant "the Plan Administrator of the Plans of NCR Corporation." Defendants concede that the "Plan Administrator" is a proper defendant here and move only to dismiss Ms. Ledford, the Committee, and NCR as party-defendants.

Defendants argue the only "proper party defendant is the party that controls administration of the plan," *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997), at the time the benefits determination was made. According to Defendants' motion, the "Plan Administrator of the Plans of NCR Corporation" is the proper defendant because in February 2013, NCR appointed the Plan Administrator of the Plans of NCR Corporation, to serve as plan administrator of the NCR Pension Plan. All of NCR's nonqualified plans included language indicating that when NCR delegated its authority as plan

administrator of the NCR Pension Plan, the delegee automatically became plan administrator of all the nonqualified plans.[10]

Defendants rely on the "NCR Pension Plan Instrument of Appointment" attached as Exhibit F[11] to the Motion to Dismiss, arguing that the Court may consider the document because Plaintiffs incorporated it by reference in paragraph 46 of the Complaint, which alleges that the "'Plan Administrator' was defined to be the Compensation and Human Resource Committee 'unless NCR delegated that authority to someone else.'" (Compl. ¶ 46.)  Defendants contend that "[t]he instrument of appointment is the delegation of authority referred to in the Complaint." [Doc. 25 at 18 n.9].  Plaintiffs oppose the Court's consideration of the Instrument of Appointment, asserting that they made no express reference to this extrinsic document in their Complaint and the allegations do not otherwise incorporate the document by reference.  Accordingly, Plaintiffs argue that the Court should limit its analysis to the allegations in the Complaint as to administration of the plans.

---

[10] Defendants point the Court only to language in SERP indicating as such.  *See* Mot. to Dismiss Doc. 12-1 at 28 n.13 ("the Plan Administrator is the 'Committee' except in circumstances where 'NCR has delegated its authority as Plan Administrator of the NCR Pension Plan . . . to any individual or entity . . . then the Plan Administrator for the Plan shall be the individual or entity that is the Plan Administrator of the Pension Plan.'")  However, the Court found similar provisions in all the nonqualified plans.  *See* Plan for Officers, Doc. 1-1 at 57; Excess Plan, Doc 1-4 at 23; Mid-Career Plan, Doc 1-5 at 23; Officer Plan, Doc. 12-6 at 2; AT&T Transfer Plan, Doc. 12-7 at 3.

[11] Exhibit F indicates that NCR appointed a "Plan Administration Committee" to serve as Plan Administrator of the NCR Pension Plan.  Defendants appear to treat the Plan Administration Committee as the same entity as the fourth named Defendant, the Plan Administrator of the Plans of NCR Corporation.  Plaintiffs do not challenge Defendants' characterization.  Thus, the court presumes that the Plan Administration Committee and the Plan Administrator of the Plans of NCR Corporation are one and the same for purposes of deciding this motion to dismiss.

The Court disagrees. A court may consider defendants' exhibits if (1) the plaintiffs refer to such documents in the complaint; and (2) the documents are central to the plaintiffs' claims. *See, e.g., Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). The Court finds that Exhibit F meets both criteria. First, although Plaintiffs do not *expressly* reference the Instrument of Appointment in their Complaint, paragraph 46 identifies "the Compensation and Human Resource Committee of the Board of Directors" as Plan Administrator, "*unless NCR delegated that authority to someone else.*" Plaintiffs' Complaint acknowledges that NCR *could* delegate authority to administer the plans to an entity other than the Committee, therefore the Court finds the Complaint fairly encompasses NCR's delegation authority and thus incorporates by reference the Instrument of Appointment. Second, the document is central to Plaintiffs' denial of benefits claims because it establishes *who* is capable of providing Plaintiffs the relief they seek under the plans. *See Griffin v. SunTrust Bank, Inc.*, 157 F. Supp. 3d 1294, 1296 (N.D. Ga. 2015), *aff'd*, No. 15-12858, 2016 WL 1657973 (11th Cir. Apr. 27, 2016) ("An entity is a proper defendant under § 1132(a)(1)(B) only if it has the discretion to award the benefits at issue."); *Griffin v. Lockheed Martin Corp.*, No. 15-13515, 2016 WL 1397707, at *2 (11th Cir. Apr. 11, 2016) (holding that a party controls administration of the plan when they have discretion to award the benefits at issue and proof of the entity that controls the administration of the plan "may come from the plan document, but can also come

from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document.")

Plaintiffs argue that even if the Court considers the Instrument of Appointment, the Complaint can fairly be read to allege not only a denial of benefits claim, but also to allege that NCR, the Committee, and Ms. Ledford wrongfully breached the terms of the plans by "remov[ing] the Trustee, tak[ing] the Trust funds, alter[ing] NCR's burden of proof, and mak[ing] other changes to plaintiffs' pension plans when they had no authority under the plans to do so." (Doc. 23, at 29.) Even though Plaintiffs have in fact asserted a breach of contract claim in Count I of their Complaint, the only relief sought by Plaintiffs is for unpaid benefits. When the relief sought for a breach of contract claim is payment of benefits, the breach claim should properly be recast as a claim for benefits under ERISA. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213 (11th Cir. 1999). And "the relief provided in an action to recover benefits under [§ 1132(a)(1)(B) ] of ERISA is equitable, not legal [;] ... the relief consists of an order directing a person or entity *having* the necessary authority under the benefit plan to pay the participant the benefit that he seeks." *Hunt v. Hawthorne Assocs., Inc.,* 119 F.3d 888, 906–07 (11th Cir.1997) (emphasis added). Plaintiffs have not alleged or asserted that NCR, the Committee, or Ms. Ledford have the authority to make benefits determinations or to pay Plaintiffs the benefits they seek. Nor have Plaintiffs cited any case law or statutory authority to support the proposition that a party with *prior* authority to award benefits, is a proper party to a claim for

ERISA benefits under § 1132(a)(1)(B). Thus, without the current authority to pay Plaintiffs any additional benefits under the plans due to the alleged breach of the plans, NCR, the Committee, and Ms. Ledford are not the proper defendants in this case. Accordingly, Defendants' motion to dismiss NCR, the Committee, and Ms. Ledford as party defendants is **GRANTED WITHOUT PREJUDICE**.[12] Going forward, pursuant to ERISA, the Plan Administrator of the Plans of NCR Corporation, as *current* administrator, must stand in the place of any alleged wrongdoers with respect to Plaintiffs' claims, and thus is the only proper defendant in this case.

### 3. Count I: Improper Removal of the Trustee and Elimination of the Trusts

Defendants argue that Count I of the Complaint should be dismissed in its entirety. Count I alleges that NCR breached the terms of SERP and the Plan for Officers by eliminating the trust and trustee and then "arrogating to itself the power to make all decisions regarding benefits." (Compl. ¶¶ 94, 95.) Under both SERP and the Plan for Officers, NCR was permitted to amend or terminate the plans "provided, however, that no such action shall *adversely affect* any . . . former Participant's . . . accrued benefits." (Doc. 1-1 at 1; Doc. 1-2 at 49.) (emphasis added). Defendants argue that they did not breach the plans, reasoning that removal of the trust and trustee were merely procedural changes that did not adversely affect Plaintiffs' substantive accrued benefits under the

---

[12] If during discovery, Plaintiffs find that they have colorable claims against NCR, the Committee, and Ms. Ledford, Plaintiffs may move to amend their Complaint at that time.

plans. Plaintiffs respond that the amendments were not merely procedural and that they *did* adversely affect their accrued benefits. Plaintiffs reason that by removing the protections of having an independent party decide their benefit appeals, Defendants made it more difficult for Plaintiffs to challenge the adequacy of their termination benefits.

It is true that "in determining whether a plan affects benefits, [some] courts have drawn a distinction between procedural amendments regarding claims administration and amendments regarding a claimant's substantive eligibility for, or entitlement to, benefits." *Williams v. Target Corp., No. 12-CV-11775*, 2013 WL 5372877, at *8 (E.D. Mich. Sept. 25, 2013), *vacated and remanded*, 579 F. App'x 390 (6th Cir. 2014). A procedural amendment is one that alters *only* administration of a benefit determination, not the benefits themselves. *Id.* The Court is not convinced that elimination of the trust and trustee were merely procedural amendments. Defendants cite to *Corvi v. Eastman Kodak Co. Long Term Disability Plan*, No. 01 CIV 365 DLC, 2001 WL 484008, at *4 (S.D.N.Y. May 8, 2001) for the proposition that delegation of authority *to* a third party to make benefit determinations did not affect plaintiffs' substantive entitlement to benefits. However, they did not cite to any case, nor could the Court find one, where the shift of authority to make benefit determinations *from* a third party to the employer was held to be merely procedural. Because a conflict of interest can exist where an employer administers its own plans and pays participants from its own assets, *e.g.,*

*Levinson v. Reliance Standard Ins. Co.*, 245 F.3d 1321, 1325-26 (11th Cir. 2001), it is plausible that such a conflict adversely affected Plaintiffs' accrued benefits under the plans.[13]

Defendants also assert that the district court in *Taylor v. NCR Corp.*, No. 14-2217-WSD, 2015 WL 5603040, at *6 (N.D. Ga. Sept. 23, 2015), recently determined that NCR's decision to amend the Plan for Officers did not in and of itself adversely affect the accrued benefits of former participants.[14] However, the issue before the Court is not whether NCR *could* have conceivably amended the plans without adversely affecting Plaintiffs' accrued benefits but rather whether Plaintiffs have sufficiently pled that this particular amendment — removal of the trustee — *did* have such an effect. The Court finds Plaintiffs' allegations sufficient. It is reasonable to infer that the procedural protections of having an independent trustee decide Plaintiffs' appeals claims were a central part of protecting their accrued benefits. At this stage of the proceedings, the Court is not deciding whether removal of the trustee did in fact breach SERP and the Plan for Officers by adversely affecting participants. It simply cannot find as a matter

---

[13] Moreover, procedural amendments can affect substantive rights if they affect participants' entitlement to benefits. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 577 (2d Cir. 2006) (finding that an amendment granting the plan administrator sole discretion to make benefit determinations affected the substance of plaintiff's benefits because it altered the court's standard of review). Thus, the Court's conclusion holds true even if removal of the trustee is characterized as procedural.

[14] The plaintiff in *Taylor* argued only that the "adverse effect" of NCR amending and subsequently terminating the plans was the tax burden associated with receiving a lump sum payment. *Id.* at *2. The court held that tax consequences were not a sufficient "adverse effect" as to maintain a claim under Section 502(a)(1)(B). *Id.* at *8. The Court also noted plaintiff's failure to allege "that the present value reduction factor was the wrong factor to apply, was miscalculated, or otherwise resulted in lowering the actuarial value of his benefits." *Id.*

of law that the amendment did not adversely affect participants' accrued benefits under the plans. Thus, Plaintiffs' contentions that evisceration of these protections breached the plans is "plausible on its face" and survives this motion to dismiss.

### 4. Count II: Use of an Improper Interest Rate to Reduce Participants' and Spouses' Annuities to Present Value

Count II alleges that Defendants used the improper discount rate when calculating Plaintiffs' lump sum termination benefits under all nonqualified plans. Plaintiffs allege two bases for this claim: (1) the discount rate used was unreasonable and adversely affected Plaintiffs' accrued benefits; and (2) NCR was required to apply the actuarial assumptions of the NCR Pension Plan, not at issue in this case, which required use of IRC 417(e) rates. Defendants argue that Count II should be narrowed by dismissing Plaintiffs' second argument.

All of NCR's nonqualified plans, with the exception of SERP, expressly required the actuarial assumptions of the NCR Pension Plan to be used in calculating lump sum benefit payments. The NCR Pension Plan, in turn, required use of the discount rates in IRC 417(e). SERP was silent on how any lump sum benefits were to be calculated. Defendants' first argument is that the absence of any language in SERP requiring use of the actuarial assumptions in the NCR Pension Plan precludes Plaintiffs from alleging that Defendants were in fact required to use such assumptions. To support their argument, Defendants cite *Wilcox v. Standard Ins. Co.*, 340 F. Supp. 2d 1266 (N.D. Ala. 2004). But *Wilcox* is not persuasive, given its factual posture. In *Wilcox*, the court entered

judgment against the plaintiff when his claim *contradicted* the plain language of the plan. *Id.* at 1282. In contrast, SERP did not *prohibit* NCR from using the actuarial assumptions of the NCR Pension Plan. To the contrary, SERP did not include any provisions on how lump sum termination benefits were to be calculated. Because Plaintiffs' allegations do not run contrary to the express language in SERP, the Court rejects Defendants' first argument.

Secondly, Defendants argue that Plaintiffs only challenged the reasonableness of the discount rate used during the administrative process, not that NCR was required to use the actuarial assumptions of the NCR Pension Plan. Thus, Defendants contend that Plaintiffs have not exhausted their administrative remedies with respect to the latter allegation. Plaintiffs respond that they exhausted their *claim* that NCR used the improper discount rate, and that is sufficient. Plaintiffs contend that ERISA requires only claim exhaustion, not issue exhaustion. Thus, they can raise additional theories supporting their claim in court.

The law is settled that ERISA plaintiffs must exhaust their administrative claims prior to instituting a lawsuit. *See, e.g.*, *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). Although the Eleventh Circuit has not weighed in on whether to adopt an issue exhaustion requirement in addition to claim exhaustion, most other circuits, and at least one district court in the Eleventh Circuit, have elected against requiring issue exhaustion. *See Liss v. Fid. Employer Servs. Co.*, 516 F. App'x 468, 474 (6th Cir. 2013) ("We decline to

impose [an issue-exhaustion] requirement."); *Farr v. Hartford Life & Acc. Ins. Co.*, 322 F. App'x 622, 628 (10th Cir. 2009) ("We have . . . applied a rule barring ERISA claims that were not previously pursued administratively (i.e., claim exhaustion). But we have not extended this rule to bar subsidiary arguments urged on judicial review in support of a claim itself fully exhausted in the administrative process (i.e., issue exhaustion)."); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008) (["Plaintiff] exhausted his administrative remedies by requesting review of his claim denial and obtaining the Plan's final decision on his claim. His subsequent decision to raise a new issue before the district court did not retroactively erase his prior effective exhaustion of administrative remedies."); *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984) ("ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion."); *Lieberman v. United Healthcare Ins. Co.*, No. 09-81050-CIV, 2010 WL 903260, at *3 (S.D. Fla. Mar. 10, 2010), *aff'd*, 413 F. App'x 171 (11th Cir. 2011).

The Court is persuaded by the Ninth Circuit's reasoning in *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008). In *Vaught*, the court presented three rationales for holding that issue exhaustion was inapplicable in the ERISA context. First, the court reasoned that "issue exhaustion is typically a creature of statute or agency regulation." *Id.* at 630 (citing *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). However, no ERISA statute or regulation mandated plaintiffs to identify all issues during the administrative

process that they wished to preserve for appeal.  *Id.*  Second, the court reasoned that the non-adversarial nature of ERISA proceedings, along with the fact that most plaintiffs are not represented by counsel at the administrative stage weighed against imposing an issue-exhaustion requirement.  *Id.* at 631–632. Finally, the court explained requiring issue exhaustion was particularly unwarranted when the plan did not explicitly notify participants that *only* issues raised administratively could be pursued in court.  *Id.* at 632.

The Court finds all three rationales applicable in this case.  First, ERISA itself does not preclude the Court from considering issues that Plaintiffs did not raise administratively.   Even the requirement that plaintiffs exhaust their administrative *claims* is a judicially imposed requirement, not one expressly imposed by statute.  *See Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1210 (11th Cir. 2003).  Second, in addition to the non-adversarial nature of the administrative process, nothing in the record indicates Plaintiffs were represented by counsel during that process.  To the contrary, Plaintiffs signed all claims and appeals letters suggesting they were not represented.   (Mot. to Dismiss Exs. A, B, C.)  Finally, neither party alleges that Plaintiffs were put on notice that issues had to be raised administratively to be preserved for any subsequent action brought in court.   All the plans were silent as to such a requirement.  Moreover, the plan administrator decided each of Plaintiffs' claims with finality, noting in each case:

> Upon receiving this appeal denial you have now exhausted the Plan's procedures . . . *Any claim or action* filed in court or any other tribunal in connection with a Plan benefit by or on behalf of a participant or beneficiary *may only be brought* or filed in the United States District Court for the Northern District of Georgia.

(Doc. 12-3 at 57; Doc. 12-4 at 25; Doc. 12-5 at 38.) (emphasis added.) Such language runs contrary to Defendants' current position that Plaintiffs were required to return to the administrative process before advancing any new issues in court.

In a similar case, the district court for the Southern District of Florida also found the reasoning in *Vaught* persuasive. *See Lieberman v. United Healthcare Ins. Co.*, No. 09-81050-CIV, 2010 WL 903260, at *3 (S.D. Fla. Mar. 10, 2010), *aff'd*, 413 F. App'x 171 (11th Cir. 2011). In *Lieberman*, the district court dismissed defendant's argument that plaintiff had failed to meet the exhaustion requirement by disputing only the amount of benefits paid, not defendant's method of calculating the benefits at the administrative level. *Id.* The court held that the plaintiff had exhausted her administrative claim, noting "[d]efendant's argument would require the Court to adopt issue exhaustion, not claim exhaustion." *Id.*

Defendants relied on decisions from the Fifth and Seventh Circuits requiring plaintiffs to raise all issues before the plan administrator as a prerequisite to raising the issues in court. *See Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725 (7th Cir. 2007) and *Harris v. Trustmark Nat. Bank*, 287 F. App'x 283 (5th Cir. 2008). In *Hess,* plaintiffs

requested a different form of relief that they had not requested at the administrative level. *Hess*, 502 F.3d at 729. Here, Plaintiffs are requesting the same form of relief, namely that a lower discount rate be used to calculate their lump sum termination benefits. Plaintiffs have simply added an additional rationale to support their claim. Thus, *Hess* is inapplicable to the facts of this case.

In *Harris*, the Fifth Circuit did impose an issue exhaustion requirement on the plaintiff, reasoning that "[a] plaintiff has not exhausted his administrative remedies on an issue if he fails to raise it before the plan administrator." *Harris*, 287 F. App'x at 288. The court explained that district courts are normally limited to reviewing agency action under an arbitrary and capricious standard, not *de novo. Id.* To determine whether an administrative determination was arbitrary and capricious, a court must necessarily "have the opportunity to review the plan administrator's resolution of the issue." *Id.* The Court understands the Fifth Circuit's rationale and can envision circumstances where a plaintiff raises new compelling grounds to support their claim in court that were unforeseeable to the plan administrator at the time of making the benefit determination. In such circumstances, it may be difficult for a court to review the administrator's decision under an arbitrary and capricious standard. However, here, all plans, other than SERP, included language that required the use of the NCR Pension Plan's actuarial assumptions in calculating lump sum benefits. Given the relationships between the plans, at least in the context of this case, the Court

would not be hindered in determining whether the plan administrator was arbitrary and capricious in applying an improper discount rate, solely because Plaintiffs did not raise the specific allegation concerning the NCR Pension Plan rates during the administrative proceedings.  Because all the non-SERP plans did provide for a method of determining lump sum benefit payments, the Court could determine whether it was arbitrary and capricious for the same methodology not to have been used for SERP, even absent the administrator's express consideration of the issue.

Accordingly, the Court follows the weight of authority in other circuits, and declines to impose an issue exhaustion requirement in this case.  Thus, Defendants' motion with respect to Count II is denied.

### 5. Count III: Improper Interpretation of the Term "Eligible Spouse" to Deprive Participants' Spouses of Accrued Benefits

Defendants move to dismiss Count III in its entirety.  Count III alleges that NCR erroneously interpreted the definition of "eligible spouse" in the plans to include only those spouses who were married to participants on the date benefits commenced *and* the plans' termination date.  Plaintiffs argue that all spouses married to participants on the benefits' commencement date met the definition of "eligible spouse"; marital status as of the termination date was irrelevant.  Because the plans provided for lump sum termination benefits to be paid to "eligible spouses," Claim III alleges that Defendants' definition deprived spouses who had divorced participants prior to termination of the plans of such

payments. Defendants move to dismiss Count III on two grounds: (1) Plaintiffs lack standing to raise this issue; and (2) Plaintiffs failed to exhaust their administrative remedies.

Defendants challenge Plaintiffs' standing to assert the claim in Count III for Defendants' alleged "Improper Interpretation of the Term 'Eligible Spouse' to Deprive Participants' Spouses of Accrued Benefits" because the (1) Complaint fails to plead facts sufficient to establish a constitutionally cognizable injury and (2) only a spouse is entitled to relief under the Plans' "eligible spouse" provisions. Plaintiffs' Complaint allegations are not limited to participants, but extend to former spouses as beneficiaries under the Plans, (Compl. ¶¶ 4, 5(b), 5(f), 19, 23, 38, 72, 104-110), and seek to certify a class including "all participants, former participants, and spouses or eligible spouses" and to "prosecut[e] the claims of participants and Eligible Spouses" in a single class action, (*id.* ¶¶ 81-83, 90).

Defendants assert that Plaintiffs have not established *constitutional* standing to raise the eligible spouse claim, but point only to cases deciding whether a plaintiff was entitled to assert a cause of action under 29 U.S.C. § 1332. (Mot. to Dismiss at 16, relying on *Wolf v. Coca-Cola*, 200 F.3d 1337, 1340 (11th Cir. 2000) (citing 29 U.S.C. § 1332(a)(1), and stating that "[t]o assert a claim under ERISA, the plaintiff must be either a 'participant' or a 'beneficiary' of an ERISA plan . . . ERISA thus imposes two requirements for participant status. First, the plaintiff must be an employee. Second, the plaintiff must be 'according to the language of the plan itself, eligible to receive a benefit under the plan. An

individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA.'"); *Burton v. Blue Cross Blue Shield of Kansas City*, 2013 WL 6709570 (D. Kan. 2013) (characterizing whether 29 U.S.C. 1332(a)(1)(B) authorizes a claim as "ERISA standing"); *Powers v. BlueCross Blue Shield of Illinois*, 947 F. Supp. 2d 1139 (D. Col. 2013) (addressing defendants' argument that "the language of the statute limits standing to the individual due benefits, and in this case benefits are due, if at all, to Mary, not Tom, Powers" and finding that because "Mr. Powers has not alleged that benefits are due to him under the terms of his plan or that he is seeking to enforce his rights or clarify his rights to future benefits. Under the language of the statute, Mr. Powers does not have standing under § 1132(a)(1)(B).").)

Defendants conflate "constitutional" and "statutory" standing. As the Supreme Court and Eleventh Circuit have recently tried to clarify, the reference to the concept of "statutory standing" is a misnomer. *See, e.g., Griffin Gen. Mills, Inc.*, 634 F. App'x. 281, 284 (11th Cir. 2015) (per curiam) ("Although courts have long applied the label of "statutory standing" to the basis for decisions such as the district court's here, that Dr. Griffin lacked standing under ERISA, the Supreme Court has cautioned that this label is 'misleading' because the court is not deciding whether there is subject matter jurisdiction but rather whether the plaintiff "has a cause of action under the statute.") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ––– U.S. –––, 134 S.Ct. 1377, 1387–88 & n.4 (2014). While ERISA may provide a cause of action to certain individuals for

violations of its statutory provisions and/or the terms of ERISA plans, plaintiffs must still satisfy Article III's constitutional standing requirements. As explained further herein, in doing so, a plaintiff may assert that harm resulting from a statutory violation constitutes the injury in fact prong of constitutional standing.

Section 1132(a) of ERISA, the statute's civil enforcement provision, sets forth the following requirements regarding which "persons [are] empowered to bring a civil action":

> A civil action may be brought—
> (1) by a participant or beneficiary—
> ...
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> ...
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

29 U.S.C. § 1132(a). Under the express terms of the Plans at issue, the Plan participants are not the beneficiaries of the spousal death benefit survivor annuity. Section 1132(a)(1)(B) would not provide Plaintiffs Hoak, Fano, and Quick the right to assert a claim as to those benefits but would provide their "eligible spouses" with a statutory cause of action as to their right to those benefits. Section 1132(a)(3) does, however, appear to provide ERISA plan participants, such as Plaintiffs Hoak, Fano, and Quick with a cause of action to either (a) enjoin the Plan Administrator's improper interpretation of the terms of

the participants' plans, or (b) to obtain other appropriate equitable relief to redress violations of ERISA or enforce the terms of the plans. With respect to the claim asserted in Count III, Plaintiffs' Complaint seeks: (1) a declaration that NCR's interpretation of the terms "Spouse" and "Eligible Spouse" as requiring that spouses be married to participants both at the time benefits commenced and when the plans were terminated is contrary to the Plans, and (2) an order requiring NCR to pay participants and their "eligible spouses" a lump sum reflecting the difference between what NCR has already paid and what they are required to pay under the Court's declarations. (Compl. at 3, 31.) Setting aside the broad and permissive nature of the provisions of Section 1132(a), each of the named Plaintiffs themselves must still establish constitutional standing to assert a claim related to the spousal benefit provisions of their Plans.[15]

---

[15] Prior to certification of any purported ERISA class action, district courts "must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Hall v. Aetna Life Ins. Co.*, 759 F. Supp. 2d 1321, 1324 (N.D. Fla. 2010). "'Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.'" *Bush*, 221 F.3d at 1279 (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). In evaluating a plaintiff's standing, the court must determine whether he has "'alleged 'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "Generally, a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Bringing suit in the form of a class action does not abrogate the individualized standing requirement. *See Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 fn. 6 (11th Cir. 2000). "Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's — or, in this case, the class plaintiffs' — claim." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). And when the court lacks jurisdiction, its only function is to announce that fact and dismiss the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Plaintiffs have the burden to establish that they have standing to pursue their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff must demonstrate three things to establish standing under Article III: he must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). "These requirements are the "'irreducible minimum' required by the Constitution" for a plaintiff to proceed in federal court." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 664 (1993)).

As the Supreme Court recently discussed in *Spokeo,* standing to sue, "a doctrine rooted in the traditional understanding of a case or controversy . . . limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." 136 S. Ct. at 1547. "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 1549. (discussing Justice Kennedy's opinion in *Lujan*, at 580, concurring in part and concurring in judgment). Even so, as "[i]njury in fact is a constitutional requirement[,] Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48 (internal citations and quotations omitted). A plaintiff does not

"automatically" satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

To establish injury in fact, a plaintiff must allege that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548; *Lujan*, 504 U.S., at 560. For an injury to be "concrete," it must be "*de facto*," "real," and not "abstract." *Spokeo*, at 1548-49 (but also clarifying that "concrete" is not necessarily synonymous with tangible and confirming that intangible injuries can nevertheless be concrete.) For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* at 1548 (collecting cases); *Lujan*, 504 U.S. at 560, n. 1; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("'plaintiff must allege personal injury'"); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("'distinct'"); *Allen v. Wright*, 468 U.S. 737, 751 (1984) ("personal"); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "'personally has suffered some actual or threatened injury'"). Thus, "Article III standing requires a concrete injury even in the context of a statutory violation" and plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, at 1549 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is

affected by the deprivation . . . is insufficient to create Article III standing")).  The essence of the Supreme Court's holding in *Spokeo* is that the violation of a right granted by statute can be sufficient in some circumstances to constitute injury in fact while in other circumstances it may result in no harm.  *Id.*

On a motion to dismiss, the Court "must evaluate standing based on the facts alleged in the complaint, and [] may not speculate concerning the existence of standing or piece together support for the plaintiff." *Shotz*, 256 F.3d at 1081 (quoting *Cone Corp. v. Florida Dept. of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1991)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," because on a motion to dismiss the Court may "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561; *City of Miami v. Bank of America Corp.*, 800 F.3d 1262, 1272 (11th Cir. 2015).

In their opposition, Plaintiffs present a rambling, unhelpful patchwork of points that are not responsive to Defendants' standing challenge.  Plaintiffs argue they have standing without ever explaining how their Complaint allegations establish an injury in fact.  Instead, Plaintiffs start by pointing out that under ERISA and the Plans, "the person to whom participants were married when they began receiving retirement benefits (the "Spouse" or "Eligible Spouse") is entitled to receive an annuity when the participant dies, a so-called 'survivor' annuity," and that "ERISA prohibits the Plans from eliminating this accrued benefit." (Resp. at 20.)  Interestingly, this contention only seems to underscore

Defendants' position that Plaintiffs themselves do not have an interest in the spousal survivor annuity and cannot establish the necessary injury in fact for standing.

Plaintiffs next assert that Plaintiff Allan Quick, (but not specifically the other named plaintiffs), who after he started receiving his annuity divorced his wife and entered into a settlement of his financial affairs, raised the issue of the survivor annuity during the administrative proceedings[16] — an issue relevant to exhaustion but not standing. After receiving notice of the amount of his lump sum payout from NCR based on an actuarial value of the benefits, Quick argued in his claim before the Plan Administrator that NCR's termination of the plan and payment of a lump sum using an unreasonable actuarial discount rate adversely impacted his ability to comply with his requirement to pay court-ordered lifetime annual alimony payments to his ex-wife based on his expected payout under his retirement plans for the remainder of his lifetime. Quick asked NCR to increase his lump sum payout, or alternatively, to reallocate "the additional lump sum" of $244,844.82 (presumably to be paid to his "eligible spouse") to Theresa Quick (his first ex-wife) in order to off-set the amount he would be unable to pay in alimony as a resolution of his claim. Quick did not assert that he was entitled to the spousal survivor annuity nor did he directly challenge the Plan's interpretation of "eligible spouse."

---

[16] Plaintiffs' claim in Count III bears no resemblance to any administrative claim submitted to NCR's Plan Administrator related to spousal benefits under the Plans (and only Plaintiff Quick made a claim that can arguably be characterized as touching on the death benefit annuity for spousal beneficiaries) as explained herein.

Following the denial of both his claim and appeal, Quick wrote in a letter that the Plan Administrator had failed to address the basis of his claim: "Let me state again that I am not basing my claim on the 'Eligible Spouse' death benefit provision. My claim is based on the expectation, based on letters from NCR law department, that my SERP benefit had been secured by a Trust and that I was safe in assuming my benefit would continue throughout my lifetime, barring NCR's insolvency, when I committed to a lifetime alimony amount based on my SERP benefit expectation . . . Please note that this has nothing to do with whether or not Theresa Quick was an Eligible Spouse or not? It is purely a matter of 'was the Participant's benefit harmed by the lump sum payout because of the court-ordered lifetime alimony commitment he made based on the SERP expectation."[17] (Doc. 12-5 at 40.)

Plaintiffs now assert in their response brief that Plaintiff Quick made clear in his administrative claim and appeal "that he believes that *he* is entitled to the actuarial value of the survivor annuity, *not* his ex-wife," and that Quick claimed "he was entitled to the actuarial value of his ex-wife's survivor annuity based on the terms of his divorce decree." (Resp. at 21.) Thus, Quick's "obvious personal, monetary interest in the 'Eligible Spouse' claim . . . obviously gives him standing

---

[17] Mr. Quick, therefore, by his own concession, may not have exhausted at the administrative level the claim asserted here in Count III challenging the interpretation of "Eligible Spouse." Nonetheless, the administrator justified his denial of Mr. Quick's claims based in part on this interpretation, both when considering the initial claim and subsequent appeal. Thus, the Court believes requiring further administrative review would be futile. Although Plaintiffs are silent as to whether Hoak or Fano raised this claim before the Plan Administrator as would be necessary to exhaust their administrative remedies, the Court finds that even if they did not, the futility exception would similarly apply to them because the Plan Administrator appears to have applied a uniform interpretation across the board.

to make a claim regarding defendants' interpretation of 'Eligible Spouse.'" (*Id.*) Plaintiffs' position is blatantly contradicted by the very documents Plaintiffs rely on. The documents attached to the briefs relating to Mr. Quick's divorce proceedings (with his second wife Nancy Quick not Theresa Quick) indicate that Mrs. Quick, in the event she survived Mr. Quick, would be entitled to the retirement benefits for the surviving spouse of Mr. Quick under SERP.[18] (Doc. 23-1 at 17.) More importantly however, there are no allegations in the Complaint or in Count III that Plaintiffs, as participants under the Plans, are entitled to the survivor benefits (as opposed to their ex-wives) by virtue of their divorce decrees.

Here, Plaintiffs' Complaint contains no allegations from which the Court can reasonably infer that Plaintiffs — as opposed to their "eligible" spouses, or ex-spouses — have suffered a concrete and particularized injury as a result of NCR's alleged improper interpretation of the terms "spouse" and "eligible spouse" "to eliminate the accrued benefits of spouses who were married to participants when benefits commenced under the plans, but who divorced participants prior to the plan termination and payment of lump sums." (Compl. ¶ 106.) First, other than a vague reference to "divorce decrees," there is no actual allegation that any of the named Plaintiffs were (1) married at the time they began receiving benefits under the plans, and (2) then later divorced and married a different spouse — prior to termination of the plans and the determination by the Plan Administrator of the

---

[18] During his administrative claim, Mr. Quick first argued that the surviving spouse benefit should be paid to his first wife, Theresa. However, now in response to Defendants' Motion to Dismiss, Mr. Quick's current position appears to be that *he* is entitled to the spousal benefits by virtue of his divorce to his second wife, Nancy.

lump sum actuarial value of the retirement and survivor death benefits. Though the Court is aware from documents produced by the parties as to Plaintiff Quick that Quick falls within this scenario, the Complaint itself contains no such allegations with respect to Plaintiff Quick, or Plaintiffs Hoak or Fano.

Nor does the Complaint contain any allegations as to how each of the named Plaintiffs — as opposed to his eligible spouse — was impacted by the Plan Administrator's interpretation of eligible spouse. In fact, the only reasonable inference to be drawn from the actual Complaint allegations is that the impact of the Plan Administrator's interpretation was to "to eliminate the accrued benefits of spouses who were married to participants when they retired but who later divorced," when the Plan language provided that if participants "pre-decease the persons to whom they are married when they began receiving retirement benefits, those spouses would be entitled to receive a portion of the participants' annuities for the remainder of the spouses' natural lives (so-called 'joint and survivor annuities')." (Compl. ¶¶ 3, 19; *see also* ¶¶ 71, 83, 105-109.) The only allegation that indicates any potential impact to Plaintiffs, as plan participants, is Paragraph 110, stating that "NCR's improper, retroactive change to the definition of Eligible Spouse adversely affects Eligible Spouses and participants' accrued benefits under the plans, and upsets the assumptions underlying their divorce decrees." Paragraph 110, however, fails to explain the basis for an adverse impact on the participants' accrued benefits under the plans, particularly in light of the preceding allegations in Paragraph 108 that as a matter of law "spousal benefits

are irrevocably fixed . . . [and] irrevocably vest in the participant's spouse."[19] Even though "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, Plaintiffs' vague reference to assumptions underlying divorce decrees does not embrace any specific facts that are necessary to support the claim in Count III by Plan participants regarding the Plans' spousal benefit provisions. *City of Miami v. Bank of America Corp.*, 800 F.3d at 1272; *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Instead, Plaintiffs' allegations in Paragraph 110, considered alongside the other clear allegations in the complaint, require the Court to speculate concerning the existence of Plaintiffs' standing and invite the Court to piece together support for the Plaintiffs' claim. *Shotz*, 256 F.3d at 1081.

The Court's determination that the Complaint, as currently plead, does not adequately allege Plaintiffs' standing, does not foreclose the possibility that Plaintiffs could amend the Complaint to provide actual factual allegations to establish that they have suffered a concrete and particularized injury in fact — i.e. an invasion of their legally protected ERISA rights in an individual and personal way — as a result of the Plan Administrator's eligible spouse interpretation.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss:

---

[19] Nor can paragraph 110 of Count III reasonably be read to allege such an impact on its face.

(a)     the Court **DENIES** Defendants' Motion to Dismiss all claims relating to the Plan for Officers, Excess Plan, Mid-Career Plan, and AT&T Transfer Plan for failure to exhaust administrative remedies;

(b)     the Court **GRANTS** Defendants' Motion to Dismiss all claims relating to the NCR Officer Plan and Plaintiffs' claims under that plan are **DISMISSED WITHOUT PREJUDICE** because none of the named Plaintiffs were participants in that plan;

(c)     the Court **GRANTS** Defendants' Motion to Dismiss as parties NCR, the Committee, and Ms. Ledford and they are **DISMISSED WITHOUT PREJUDICE**;

(d)     the Court **DENIES** Defendants' Motion to Dismiss Counts I and II; and

(e)     the Court **GRANTS** Defendants' Motion to Dismiss Count III for failure to adequately allege standing and Count III is **DISMISSED WITHOUT PREJUDICE**.

The parties are **DIRECTED** to confer regarding the terms of a revised scheduling order to include a briefing schedule for Plaintiffs' anticipated motion for class certification.

**IT IS SO ORDERED** this 27th day of September, 2016.

_____
**Amy Totenberg**
**United States District Judge**