IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JON HOAK, ANTHONY FANO,　:
ALLAN QUICK, and PATRICIA　:
GIERING on behalf of themselves and　:
all those similarly situated,　:
　:
　　Plaintiffs,　:
　:
v.　:
　:
PLAN ADMINISTRATOR OF THE　:　　CIVIL ACTION NO.
PLANS OF NCR CORPORATION,　:　　1:15-cv-3983-AT
　:
　　Defendant.　:
　:

## ORDER

Plaintiffs filed a putative class action under the Employee Retirement Security Act ("ERISA") on behalf of themselves and former participants in NCR Corporation's "top hat" retirement plans.  Plaintiffs are former NCR executives or spouses of executives who participated in one of NCR's nonqualified retirement plans.  These plans allegedly promised NCR executives that after they retired they would receive monthly or bi-weekly annuity payments for the rest of their lives.

In the early 1990s, in response to an offer to purchase the company by AT&T, NCR's Board created trusts to protect its employees' retirement benefits. It also appointed a trustee to "protect participants' rights to their retirement benefits."  (Am. Compl. ¶ 2.)  But according to Plaintiffs, NCR later decided to

terminate the plans, shifted the power from the trustee to a new Plan Administrator, and stopped making annuity payments.  Instead, NCR paid out benefits in lump sums to plan participants.

The Plan Administrator was responsible for ensuring that these lump sum payments were actuarially equivalent[1] to what the plan participants would have received from their annuity payments.  To do so, the Plan Administrator discounted the value of the annuity plans to their present value by applying a 5 percent discount rate to the entire annuity.  In other words, the Plan Administrator applied a 5 percent haircut to what the plan participants would have received over the life of their annuity, to account for the fact that they were receiving their funds up front.  But Plaintiffs allege that this rate is significantly higher than that required by the Plans – meaning that they received less in benefits than what they were owed.  The Plan Administrator also interpreted the terms "spouse" and "eligible spouse" to exclude spouses who were married to the participants when their plans commenced but got divorced before NCR terminated the plans.

In this suit, Plaintiffs challenge (1) the actions taken by the Plan Administrator in terminating the plans and (2) the adequacy of the benefits paid under the plans.  According to Plaintiffs, if the Plan Administrator's conduct is

---

[1] In this context, "actuarial equivalence" means the present value of the lump sum payments is equal to the present value of the stream of payments participants would have received absent termination of the plans.  Determination of the "present value" of a stream of payments requires the application of actuarial assumptions, particularly in the application of a "discount rate" that accounts for the time-value of money and risk of default on the payments, among other considerations.

permitted to stand, then "employees who worked for years based on the contractual promises of a secure retirement and their former spouses will receive significantly less than what they were promised" in their retirement plans. (Am. Compl. ¶ 4.)

Plaintiffs' Amended Complaint contains three counts: (1) Count I claims NCR breached agreements with Plaintiffs by eliminating the trusts and trustee; (2) Count II claims the 5 percent discount rate applied to the lump sum payments was improper under the terms of the plans and resulted in lump sum payments that were not actuarially equivalent to their annuities; (3) Count III claims the Plan Administrator illegally interpreted the terms "spouse" and "eligible spouse" to require that the spouses be married to the participants when NCR terminated the plans. Plaintiffs seek a declaration that NCR breached its agreements, applied an improper discount rate, and improperly interpreted the terms "spouse" and "eligible spouse."

Before the Court is Plaintiffs' Motion for Class Certification [Doc. 44]. The parties agree that class certification of some kind is appropriate, but they disagree on the nature and scope of the class definition. Plaintiffs request a class to adjudicate all three counts of their Amended Complaint. Defendant contends that class certification is appropriate only for the single issue of whether the 5 percent discount rate was actuarially equivalent to the participants' accrued benefits. Defendant argues the claims in Counts I and III in particular are not appropriate for class-wide adjudication. Additionally, Defendant asserts that the

class definition must be revised to exclude class members who have signed settlement agreements releasing Defendant from liability and class members who did not receive lump sum payments but were "entitled to" receive them.

For the reasons set forth below, the Court **GRANTS IN PART** Plaintiffs' Motion for Class Certification.

## I.   BACKGROUND

At issue in this case are five[2] "top hat" retirement benefit plans NCR offered to some of its high level executive employees and officers:  (1) the NCR Senior Executive Retirement, Death and Disability Plan ("SERP"), (2) the Retirement Plan for Officers of NCR ("Plan for Officers"), (3) the NCR Nonqualified Excess Plan ("Excess Plan"), (4) the NCR Mid-Career Hire Supplemental Pension Plan ("Mid-Career Plan"), and (5) the NCR Supplemental Pension Plan for AT&T Transfers ("AT&T Transfer Plan") – collectively referred to as "the nonqualified plans."[3]

Plaintiffs Anthony Fano and Allan Quick were participants in SERP.  (Am. Compl. ¶ 9, 11.)  Plaintiff Jon Hoak was a participant in the Plan for Officers,

---

[2] Both parties included a sixth nonqualified plan, the NCR Officer Plan (not to be confused with the Plan for Officers), in their proposed class definitions.  However, this Court previously dismissed Plaintiffs' claims under the NCR Officer Plan after determining that "at least one named plaintiff must have been a participant under a plan in order to bring a claim under the plan in a representative capacity" because of the Eleventh Circuit's requirement that plan participants exhaust their remedies prior to bringing suit.  (Doc. 26 at 14.)  Even after amending the Complaint to include a new plaintiff, none of the named plaintiffs were participants under the NCR Officer Plan.  Consistent with this prior holding, the Court has omitted the NCR Officer Plan from its consideration.

[3] The nonqualified plans contrast with NCR's IRS qualified retirement plan ("the NCR Pension Plan"), which offers certain tax deferral benefits not afforded by the nonqualified plans.  All of NCR's plans were governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 and 1002.  (Am. Compl. ¶ 13.)

Excess Plan, Mid-Career Plan, and AT&T Transfer Plan.  (*Id.* ¶ 10.)  Plaintiff Patricia Giering is the former spouse of John Giering, who was a participant in SERP.  (*Id.* ¶ 12.)  Mr. Giering retired from NCR and began receiving benefits under SERP in 1998 while still married to Ms. Giering.  (*Id.*)  The couple divorced in 2002.  (*Id.*)  Pursuant to its interpretation of the term "eligible spouse," an interpretation challenged in this action, the Plan Administrator denied spousal benefits to Ms. Giering.  (*Id.* ¶¶ 74-78.)

Upon retirement, the nonqualified plans entitled participants to lifetime annuities based on their compensation and years of service.  (*Id.* ¶ 18.)  The plans also provide for surviving eligible spouses to be paid a portion of the participants' annuities following the participants' death.  (*Id.* ¶ 20.)  The plans defined eligible spouses to be those spouses married to participants on the date their plan benefits commenced.  (*See, e.g.,* Plan for Officers, Am. Compl. Ex. A, Doc. 34-1 at 40; SERP, Am. Compl. Ex. B, Doc. 34-2 at 22.)

Each of the plans allowed NCR to unilaterally amend or terminate the plans, provided the amendment or termination did not "adversely affect" any participant's or spouse's accrued benefits.  (Plan for Officers, Am. Compl. Ex. A, Doc. 34-1 at 71; SERP, Am. Compl. Ex. B, Doc. 34-2 at 29; Mid-Career Plan, Am. Compl. Ex. D, Doc. 34-4 at 18; Excess Plan, Am. Compl. Ex. E, Doc. 34-5 at 20; AT&T Transfer Plan, Am. Compl. Ex. F, Doc. 34-6 at 8.)  In the event participants were to receive lump sum payments, Plaintiffs contend that the nonqualified plans required participants' lump sum benefits to be calculated using the

actuarial assumptions of the qualified NCR Pension Plan.  (Am. Compl. ¶ 22.) Defendant argues the provisions Plaintiffs point to in support of that contention apply only to "small, discretionary lump sum payments" and do not require using the actuarial assumptions of the NCR Pension Plan in the event of a plan termination.  (Def. Resp. Br., Doc. 55 at 13.)

Two of the nonqualified plans, SERP and the Plan for Officers, provided that if control of NCR changed hands, NCR would create and fund a trust and appoint an independent trustee to safeguard the plans' assets.  Under these provisions, the trustee would make all final determinations on benefit appeals, with NCR bearing the burden of proof. (Plan for Officers, Am. Compl. Ex. A, Doc. 34-1 at 23, 26; SERP, Am. Compl. Ex. B, Doc. 34-2 at 12-13.)  In 1991, AT&T tendered an offer for NCR, triggering the change in control provisions, including the trust and trustee provisions.  (*See* Plan for Officers, Am. Compl. Ex. A, Doc. 34-1 at 73.)  The Plan for Officers stipulated that these provisions applied only to those who had been participants in that plan for "at least one year prior to September 13, 1991 . . . and actively employed by [NCR] . . . continuously through January 1, 1995."  (*Id.*)  SERP does not contain similar eligibility requirements.

In October 2012, NCR amended the nonqualified plans, effective retroactive to December 31, 2008.  (Am. Compl. ¶ 40.)  The amendments to SERP and the Plan for Officers eliminated the trust and trustee and shifted all the benefit determination powers of the trustee to a newly designated Plan Administrator.  (Plan for Officers, Am. Compl. Ex. A,  Doc. 34-1 at 56-57; SERP,

6

Am. Compl. Ex. B, Doc. 34-2 at 35-39.)  These actions form the basis of Plaintiffs'
claims in Count I of their Amended Complaint.  (Am. Compl. ¶¶ 96-98.)

On February 20, 2013, the Plan Administrator Committee voted
unanimously that terminating the nonqualified plans and settling all accrued
benefits with actuarially equivalent lump sum payments would not "adversely
affect" the accrued benefits.  (Minutes, Feb. 20, 2013, Am. Compl. Ex. K, Doc. 34-
11 at 3; Am. Compl. ¶ 67.)   The Committee then voted unanimously that
application of a 5 percent discount rate to the lump sum payments was
"reasonable for the purposes of valuing the annuity benefits payable under the
plans." (Minutes, Feb. 20, 2013, Am. Compl. Ex. K, Doc. 34-11 at 4; Am. Compl. ¶
68)   The Committee then voted on February 25, 2013 to terminate the
nonqualified plans and pay all participants lump sum amounts calculated by
reducing the value of participants' annuities to their present value using a 5
percent discount rate.   (Am. Compl. ¶ 69.)   Defendant reported that 193
participants in the nonqualified plans received lump sum payments as a result of
the termination of the plans.  (Def. Interrog. Resp., Pl. Mot. Class Cert. Ex. A,
Doc. 44-2 at 4.)

Plaintiffs allege that the 5 percent discount rate is inconsistent with the
nonqualified plans' provisions (Count I).  (Am. Compl. ¶¶ 99-107.)  Plaintiffs also
allege that the Plan Administrator wrongly interpreted "eligible spouse" to
exclude spouses who were married when the plan participants began receiving
benefits but divorced prior to termination of the plan, thus denying lump sum

payments to such former spouses (Count II).  (Am. Compl. ¶¶ 108-113.)  Plaintiffs filed administrative claims objecting to the elimination of the trusts, the amount of lump sum benefits they received, and the interpretation of eligible spouse.  (*Id.* ¶ 73.)  After the Plan Administrator denied these claims, Plaintiffs filed appeals that the Plan Administrator also denied.  (*Id.* ¶¶ 73-79.)

Plaintiffs filed suit on November 16, 2015, on behalf of themselves and others similarly situated.  Plaintiffs now move for class certification.  The parties agree that maintenance of a class action is appropriate; however, they differ in the scope and definition of the most appropriate class.  Plaintiffs' proposed class definition would include "all participants, beneficiaries and spouses or eligible spouses" as defined in the nonqualified plans "who received or were entitled to receive a lump sum from NCR as a result of the termination of NCR's nonqualified plans."  (Pl. Br., Doc. 44-1 at 9.)  Defendant asserts that class treatment is appropriate only for a single issue: whether the 5 percent discount rate provided actuarial equivalence.  (Def. Resp. Br., Doc. 55 at 4.)

## II.  ANALYSIS

### A.  Legal Standard

Federal Rule of Civil Procedure 23 governs class certification.  It provides that one or more members of a class of litigants may sue on behalf of the class's members only if:

> 1) the class is so numerous that joinder of all members is impracticable;
>
> 2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the
claims or defenses of the class; and

4) the representative parties will fairly and adequately protect the interests
of the class.

Fed. R. Civ. P. 23(a).  The rule's four requirements are "commonly referred to as

'numerosity, commonality, typicality, and adequacy of representation.'"  *Valley*

*Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003)

(citation omitted).   District courts are obliged to undergo a "rigorous analysis" to

determine whether the prerequisites of Rule 23(a) have been satisfied.  *Comcast*

*Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citations omitted).

Parties seeking class certification must also demonstrate that the putative

class fits into one of the types of class actions listed in Rule 23(b).  *Wal-Mart v.*

*Dukes*, 564 U.S. 338, 345 (2011).  Plaintiffs argue they meet the requirements of

both Rule 23(b)(1) and 23(b)(2).  Under Rule 23(b)(1), certification is appropriate

if separate lawsuits would

1) create a risk of inconsistent or varying adjudications that would
establish incompatible standards of conduct for the party opposing
the class; or

2) would result in decisions for "individual class members that, as a
practical matter, would be dispositive of" and would "substantially
impair or impede" the interests of class members who were not
parties to the separate lawsuits.

Under Rule 23(b)(2), certification is appropriate if "the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Finally, the party seeking class certification "must establish that the proposed class is adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks and citations omitted).

### B.   Class Certification for Count II

The parties agree that maintenance of a class action is appropriate, but they disagree on the nature and scope of the class definition.  For clarity, the Court will summarize the points of contention between the parties and describe how the Court will address these disputes.

Plaintiffs request that the Court certify the following class under Rule 23(b)(2), (b)(1)(A), or (b)(1)(B):

> All participants, former participants, beneficiaries and spouses or eligible spouses, as defined in either (a) the NCR Senior Executive Retirement, Death and Disability Plan, (b) the Retirement Plan for Officers of NCR, (c) the NCR Nonqualified Excess Plan, (d) the NCR Mid-Career Hire Supplemental Pension Plan, [or] (e) the NCR Supplemental Pension Plan for AT&T Transfers, . . . who received or were entitled to receive lump sum payments from NCR as a result of the termination of NCR's nonqualified plans.[4]

(Pl. Br., Doc. 44-1 at 9.)  Plaintiffs' view is that the named plaintiffs should be permitted to prosecute all three claims in the Amended Complaint under this class definition.

---

[4] For the sake of clarity, the Court has excised references to the NCR Officer Plan from both the Plaintiffs' and the Defendant's proposed definitions because that plan is no longer at issue in this case.

10

Defendant Plan Administrator agrees that class treatment is appropriate in this case but contends that a class should be certified under Rule 23(c)(4), under which "an action may be brought . . . as a class action with respect to particular issues."  Specifically, Defendant asks the Court to certify a class under Rule 23(b)(2) and Rule 23(c)(4) only for the issue of whether the 5 percent applied to the lump sum payments was actuarially equivalent to their accrued benefit. Defendant's proposed class definition looks like this:

> All persons who received a lump sum payment from NCR as a result of the termination of (a) the NCR Senior Executive Retirement, Death and Disability Plan . . ., (b) the Retirement Plan for Officers of NCR . . ., (c) the NCR Nonqualified Excess Plan, (d) the NCR Mid-Career Hire Supplemental Pension Plan, [or] (e) the NCR Supplemental Pension Plan for AT&T Transfers . . ., for purposes of determining whether the 5% discount rate used to calculate the lump sums provided the actuarial equivalent of each person's accrued benefit.

(Def. Resp. Br., Doc. 55 at 8.)  Defendant also argues the claims under Counts I (the trust and trustee claim) and III (the eligible spouse claim) are not appropriate for class-wide adjudication.  And, Defendant asserts that the class definition must be revised to exclude class members who have signed settlement agreements releasing Defendant from liability and class members who did not receive lump sum payments but were "entitled to" receive them.

The Court finds that class certification is appropriate for some claims but not for all claims.  Specifically, the Court finds:

- First, that class certification is appropriate for Count II;

- Second, that a subclass should be certified for Count I; and

- Third, certification is not appropriate for Count III at this time, but that further discovery might warrant revisiting this claim for certification of a subclass.

### 1.    *Rule 23(a) is Satisfied*

The Court first finds that the following class should be certified for Count II – the "discount rate" claim:

> All participants, former participants, beneficiaries and spouses or eligible spouses, as defined in either (a) the NCR Senior Executive Retirement, Death and Disability Plan, (b) the Retirement Plan for Officers of NCR, (c) the NCR Nonqualified Excess Plan, (d) the NCR Mid-Career Hire Supplemental Pension Plan, or (e) the NCR Supplemental Pension Plan for AT&T Transfers who received or were entitled to receive lump sum payments from NCR as a result of the termination of NCR's nonqualified plans.

This class satisfies the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  First, the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation and internal punctuation omitted).  According to Defendant's response to Plaintiffs' interrogatory, the total number of participants who received lump sum payments is 193.  (Def. Interrog. Resp., Pl. Mot. Class Cert. Ex. A, Doc. 44-2 at 4.)  That number satisfies Rule 23(a)(1).  For the same reason, the class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691

F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks and citations omitted).

Second, the class satisfies Rule 23(a)(2)'s commonality requirement. To satisfy commonality, plaintiffs must demonstrate the class members "suffered the same injury" such that the class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 330 (quotations omitted). The claims in Count II raise questions of law and fact that are common to all class members. The question at the heart of these claims is whether the 5 percent discount rate Defendant applied to all class members' lump sum payments was actuarially equivalent to their accrued benefits as defined by the nonqualified plans.

Third, the claims of the four[5] named Plaintiffs as proposed class representatives are typical of the claims of the defined class, satisfying Rule 23(a)(3). The uniform treatment by the Plan Administrator of the named Plaintiffs and all other class members in determining the discount rate is plain from the administrative record. (*See, e.g.,* Minutes, February 18, 2013, Am. Compl. Ex. J, Doc. 34-10 at 3.)

---

[5] Defendant argued Plaintiff Giering is not an adequate or typical class representative because her claims are subject to exhaustion defenses. (Def. Resp. Br., Doc. 55 at 22.) This argument is moot based on this Court's order finding Giering had adequately pled that she had exhausted her administrative remedies. (*See* September 27, 2016 Order, Doc. 70.) The Court may, however, need to revisit the issue of whether Giering is an appropriate class representative, because she did not in fact receive a lump sum payment. However, if Giering successfully prosecutes her claim that the Plan Administrator improperly interpreted the term "eligible spouse" and wrongfully denied her benefits, then she would fall under the category of class members who were "entitled to" benefits under the Plan and in much the same position as the other named plaintiffs.

13

Fourth, the class also satisfies the last prerequisite of Rule 23(a), adequacy of representation. The named Plaintiffs and their counsel will "fairly and adequately protect the interests of the class." The named Plaintiffs' interests align with the class members in that all stand to benefit from successfully obtaining a judgment requiring application of a lower discount rate to the lump sum payments.

Finally, Defendant does not contest Plaintiffs' assertion that their counsel will fairly and adequately represent the interests of the class, and the Court finds no reason to disagree with that assertion. The Court will therefore appoint Plaintiffs' chosen counsel as class counsel.

## 2.   *Rule 23(b) is Satisfied*

Plaintiffs have also demonstrated that class prosecution of Count II is appropriate under Rule 23(b). First, both parties agree that a class should be maintained in this case under Rule 23(b)(2). To satisfy Rule 23(b)(2), the party seeking class certification must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) primarily contemplates injunctive or declaratory relief, but monetary relief may be obtained in such a class action if it is "incidental to the requested injunctive or declaratory relief." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). Monetary relief is "incidental" to injunctive or declaratory

relief if class members would automatically be entitled to it "once liability to the class (or subclass) as a whole is established . . . Liability for incidental damages should not . . . entail complex individualized determinations" *Id.* (quotation marks and citation omitted).

In calculating the discount rate uniformly for all participants in the nonqualified plans, Defendant has "acted . . . on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).  Moreover, though the Amended Complaint seeks monetary relief, that monetary relief is incidental to the declaratory relief sought by the Plaintiffs.  If the Court determines a discount rate lower than 5 percent should have been applied to satisfy actuarial equivalence, then the calculation of individualized monetary relief would be a relatively simple mathematical determination.  The Court therefore agrees with the parties that certification under 23(b)(2) is appropriate.

Plaintiffs also argue that certification under Rule 23(b)(1)(A) is appropriate because individual cases would lead to individualized outcomes despite the fact that the plans' language and governing law are the same and the Plan Administrator adopted a uniform approach in its interpretation of the plans. (*See* Pl. Br. Supp.  Mot., Doc. 44-1 at 17.)  Indeed, the Amended Complaint alleges that Defendant amended the plans "so that '[a]ll rules and decisions of the Plan Administrator shall be uniformly and consistently applied to all Participants in similar circumstances," and to make "all retirement plans of NRC [] subject to uniform provisions and procedures for plan administration, benefit claims and

appeals." (Am. Compl. ¶¶ 51-52.)   And Plaintiffs contend that certification is appropriate under Rule 23(b)(1)(B) because "NCR here treated the proposed class *as a class* in making and applying its decisions regarding how to calculate actuarial equivalence." (Pl. Br. Supp. Mot., Doc. 44-1 at 19.)   Plaintiffs argue that because the evidence in an individual class member's case would be the same as in all class members' cases, "a decision in any one class member's case could have preclusive effect." (*Id.*)   Plaintiffs' Rule 23(b)(1) arguments are persuasive.   And they weigh in favor of certification in other ways – like bolstering Plaintiff's typicality and commonality arguments.   However, the Court need not and does not decide either Rule 23(b)(1) issue, because the Court finds, and the parties agree, that certification is appropriate under Rule 23(b)(2).

### 3.   *Defendant's Arguments*

Defendant argues that class certification should be limited under Rule 23(c)(4), which allows for an action to be "brought or maintained as a class action [only] with respect to particular issues."   Defendant contends class treatment is proper only for the issue of whether the lump sum payments were actuarially equivalent to the participants' accrued benefits.   But at the same time, Defendant argues that the Court cannot address on a class-wide basis Plaintiff's version of how those lump sum payments *should* have been calculated under the plans.

In the Amended Complaint, Plaintiffs allege that the discount rate should have been calculated using the actuarial assumptions of the qualified NCR Pension Plan. (Am. Compl. ¶¶ 100-104.)   Defendant argues that this allegation is

"frivolous" because the cited plan provisions apply only to "small, discretionary lump sum payments. (Def. Resp. Br., Doc. 55 at 18-19.) Moreover, Defendant contends this aspect of Plaintiffs' claim in Count II is not suitable to class-wide adjudication because only four of the five nonqualified plans at issue had the provisions Plaintiffs point to in support of that argument. (*Id.*)

The Court rejects Defendant's argument because it requires the Court to consider the merits of Plaintiffs' claim beyond what is necessary to determine whether Plaintiffs have satisfied the requirements of Rule 23. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1255, 1266 (11th Cir. 2009) ("Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to *the degree necessary* to determine whether the requirements of Rule 23 will be satisfied.") (emphasis added) (internal quotation marks and citation omitted). The limited issues class proposed by Defendant is – at least at this stage – inextricably intertwined with the merits of Plaintiffs' substantive allegations in Count II. For example, if the Court determines that the 5 percent discount rate was improper (*i.e.* not producing lump sum payments actuarially equivalent to participants' accrued benefits), the Court would have to consider what discount rate should be applied to attain actuarial equivalence. Defendant itself argued that the determination of (1) whether the use of the 5 percent discount rate resulted in actuarial equivalence and (2) if not, what discount rate should be applied are "flip sides of the same single question." (Def. Resp. Br., Doc. 55 at 6 n.1.) And it is

clear from the Administrative Record attached to Defendant's opposition brief that Defendant did not differentiate between the plans, treated the plans collectively, and applied a uniform interpretation to the plans.  Therefore, it would be inappropriate at the certification stage to foreclose Plaintiffs from arguing on a class-wide basis that the only reasonable interpretation of each of the plans at issue (including SERP) required NCR to use a certain discount rate in calculating lump sum payments.

Defendant also argues that the class definition must be modified to exclude four participants in the nonqualified plans who have signed settlement agreements releasing NCR and the Plan Administrator from any further claim to benefits.  The Court finds no reason to adjust the class definition in that way at this stage. (Def. Resp. Br., Doc. 55 at 3, 16.)  First, Defendant's own proposed class definition makes no mention of these purported settlement agreements. Second, the only evidence Defendant provides to support the existence of these settlement agreements is a declaration by Patrick Carroll, NCR's Vice President of Total Rewards.  (*See* Carroll Decl., Doc. 55-1 at ¶ 3 ("Of the 193 plan participants who received lump sum payments, four (4) have signed settlement agreements expressly releasing NCR and the Plan Administrator from further liability on their claims under the nonqualified plans.")  But Defendant has not produced copies of any of the purported agreements that would allow the Court to determine whether they cover the claims raised in this case.  *Cf. In re SunTrust Banks, Inc. ERISA Litigation*, 2016 WL 4377131 at *1-3 (N.D.Ga. Aug. 17, 2016)

18

(Story, J.) (analyzing the language contained in severance agreements to determine whether they released plaintiffs' claims in an ERISA class action). Absent further evidence as to the existence and scope of these settlement agreements, the Court will not at this time modify the class definition to exclude the four participants who allegedly signed settlement agreements.

Finally, Defendant argues the class definition should be modified to exclude class members who were "entitled to" but did not receive lump sum payments. (Def. Resp. Br., Doc. 55 at 14-15.) Defendant argues that inclusion of individuals who were "entitled to receive" payments would create a problem in ascertaining the class members because "there is no way to determine who those persons might be without identifying every person who was ever a participant in any of the plans . . . and then conducting an individualized review of the merits of the reasons they did not receive a lump sum payment." (*Id.* at 15.) The Court is not convinced that such an inquiry would be as unduly burdensome as Defendant claims. Plaintiffs argue persuasively that "[p]resumably, NCR has already gone through the process of determining who was entitled to a lump sum" because NCR actually paid out those lump sums. (Pl. Reply Br., Doc. 66 at 12.) And according to the allegations in Plaintiffs' Amended Complaint, less than a month after the NCR Plan Administrator's February 25, 2013 vote to terminate the plans, NCR wrote to participants on March 13, 2013, informing them of the termination and the lump sum amounts they would receive in June 2013. (Am. Compl. ¶ 71.) Thus, "[t]he number of persons at issue here who may have claims

for a lump sum but were not paid lump sums should be easily determined based on NCR's records."  (Pl. Reply Br., Doc. 66 at 12.)  At this stage, the Court sees no genuine issue with identifying class members who may have been "entitled to" but did not receive lump sum payments.[6]

### C.    Certification of a Subclass for Count I

The Court next turns to Count I, which alleges that Defendant breached its fiduciary duty and the plan agreements when it eliminated the trust and trustee created for the protection of the plan participants and beneficiaries and granted itself the power to make all benefits decisions.   Defendant points out that Plaintiffs' motion did not seek certification of the trust elimination claim in Count I. (Def. Resp. Br. at 12.)  Defendant further argues that Count I is not subject to class-wide application because only two of the nonqualified plans, SERP and the Plan for Officers, contained the provisions for the trust and trustee later eliminated by NCR.  (*Id.*)  Defendant argues that this fact precludes certification of Count I.

Defendant makes an important point concerning Count I.    Although Plaintiffs' Complaint seeks to certify the "case" as a class action, Plaintiffs' Motion

---

[6] However, this challenged language may unnecessarily complicate this litigation because it may open the door for participants who were denied benefits to assert their entitlement to lump sum payments by challenging the Plan Administrator's claims determinations. An individualized review of denials of benefits is outside the scope of Plaintiffs' claims for declaratory relief and would require the Court to do much more than determine if the discount rate used by the Plan Administrator was improper under the Plans.    If this proves to be an issue, the Court may have to amend the class definition to address it. But according to Plaintiffs, any determination that someone was entitled to but did not receive benefits can be done based on the applicable plan terms (i.e. the denial of benefits to an eligible spouse), not an assessment of the personal circumstances of the individuals.

for Class Certification does not actually address the trustee claim in Count I. Instead, Plaintiffs' motion takes a broad brush approach to class certification, combining the claims in Counts 1, 2, and 3 based on the ultimate relief sought via all claims:   (1) a declaration that the 5% discount rate NCR used to calculate actuarial equivalence was contrary to the plans and law, (2) an order requiring NCR to recalculate class members' lump sums using appropriate actuarial assumptions, and (3) an order requiring NCR to pay the difference between the lump sums previously paid and the amounts they should have paid, with interest and other appropriate relief.  (Pl. Br. Supp. Mot. at 2.)

Indeed, in their motion for class certification, "Plaintiffs propose to define the class by reference to NCR's challenged action, and to include all those injured by that action in the class. Plaintiffs thus ask the Court to certify a class of all persons who were or should have been paid lump sums after NCR terminated the nonqualified plans." (*Id.* at 2.)  The only "challenged action" Plaintiffs reference in their motion is the Plan Administrator's alleged breach of the terms of the plans and ERISA "by failing to pay [Plaintiffs] the actuarial equivalent of their accrued benefit when NCR terminated the plans and paid them lump sums." (*Id.* at 1.)

In their Reply, Plaintiffs criticize Defendant for arguing that the class should be limited to the Count II claim challenging the Plan Administrator's chosen discount rate, but fail to acknowledge that their motion did not expressly seek certification with respect to the Count I claim regarding the elimination of

the trust.  Instead, Plaintiffs argue in their Reply that the selection of the discount rate is not the only common "issue" in this case, and that Plaintiffs also challenge the validity of NCR's amendments changing the standard of review, terminating the plans, and paying lump sums.  (Pl. Reply at 2-3.)  Plaintiffs do acknowledge, however, that it may be true that not all class members were protected by the trusts at issue in Count I.  But they contend that the Court "can and should treat class members who were protected by trusts and an independent trustee as a class" because their "claims are identical and can be decided on the same evidence."  (*Id.*)  Thus, Plaintiffs assert that the Court "should certify *this case* (not an "issue," as NCR suggests) to proceed as a Rule 23(b)(2) class action."  (*Id.* at 3.)  Plaintiffs suggest that "[i]f following reasonable discovery and briefing, the Court determines that the class definition should be revised, or subclasses are necessary, it can do so then."  (*Id.* 3-4.)

In *Wal-Mart*, the Supreme Court made it clear that commonality requires the ability to "generate common answers apt to drive the resolution of the litigation."  564 U.S. at 330 (quotations omitted).  Here, an answer that applies only to those class members who were eligible for the trust and trustee provisions under SERP and the Plan for Officers cannot be said to be common to the *whole* Count II class discussed above, a class which encompasses participants and beneficiaries of additional plans.

Using the Count II class to prosecute the Count I claims is also inappropriate under Rule 23(b)(2), because Defendant did not "act toward . . . *all*

members of the class in the same way" with regard to the elimination of the trust and trustee.  Fed. R. Civ. P. 23(b)(2) (emphasis added).  Rather, Defendant acted in that regard only toward those participants who were eligible for the trust and trustee protections under SERP or the Plan for Officers.  Similarly, any declaratory relief addressing the validity of NCR's amendments to the trust and trustee provisions would not be "appropriate respecting the class as a whole" because it would have no application to those class members who were not eligible for those provisions.

However, under Rule 23(c)(5), the Court may, "when appropriate," divide the class into "subclasses that are each treated as a class" under Rule 23.  The Court has discretion to certify a subclass *sua sponte*.  *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 408 (1980); *Heaven v. Trust Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997).  The Court exercises this discretion to certify a subclass of participants who were eligible for the trust and trustee provisions of SERP and the Plan for Officers to adjudicate the claims in Count I.  The Court does so despite Plaintiffs' failure to straightforwardly address Count I in their Motion for Class Certification.

It is clear from the allegations in Plaintiffs' Class Action Complaint that Defendant's conduct in revising and terminating each of the plans (thereby eliminating the trust protections in two of those plans) is central to Plaintiffs' claim for benefits.  The existence of the trustee provisions "created to protect participants' rights to their retirement benefits" is at the forefront of Plaintiffs'

23

class complaint allegations.  (*See* Am. Compl. ¶¶ 1-2.)   Plaintiffs allege that, once under new management, "NCR decided it was in the company's best interest" to terminate the plans and to make single lump sum payments to its plan participants in lieu of the promised annuities, and that "[t]o accomplish this goal, NCR amended the plans, secretly terminated the trusts, . . . replaced the plans' trustees with an NCR executive[,] and improperly calculated the amounts it owed to participants."  (*Id.* ¶ 2.)    Thus, the amendment and termination of the plans (and elimination of the independent trustees) were the means to an end to give NCR complete discretion and control over the trust assets, plan administration, and benefits claims and appeals.  (*Id.* ¶¶ 32, 48, 55.)   As a result, the Plan Administrator rejected the discount rates required by the plans for use in calculating the lump sum payments "in order to save NCR money," causing an alleged reduction of the value of the plan participant's benefits under the previous plan provisions.  (*Id.* ¶¶ 64-69.)

Although Plaintiffs do not expressly characterize the nature of the claim in Count I, it appears they allege a breach of fiduciary duty by Defendant for the "malicious" and "improper" termination of the trust provisions.  (*See id.* ¶ 56 ("Defendants' termination of the trusts and removal of the trustee "breached the agreements and was undertaken with malice toward plaintiffs and proposed class members."); *see also* ¶ 56 (alleging as common and predominating question "Whether NCR acted improperly by terminating the Trusts and removing the Trustee's responsibility for determining final administrative appeals"). ERISA

requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(i)(A) & (B). "To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'" *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (citing ERISA § 404(a)); *Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 825 (11th Cir. 2001) (finding complaint stated claim for breach of fiduciary duty despite the fact that it did not contain those specific words); *Woods v. Southern Co.*, 396 F.Supp.2d 1351, 1359 (N.D. Ga. 2005) ("The prevailing view is that, as a general rule, a plaintiff need not meet some heightened pleading requirement when bringing an ERISA claim.").

A breach of fiduciary duty claim under ERISA requires a different standard of review than Count II's discount rate claim challenging a denial of ERISA benefits. *See In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1346 (N.D. Ga. 2010) (discussing standards governing claim for breach of fiduciary duty under 29 U.S.C. § 1002(21)(A)); *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325-26 (2001) (explaining standard of review applicable to appeal of benefit denial under ERISA). And Count I provides for a broader scope

of discovery[7] than Count II, which (absent a conflict of interest) is generally limited to the administrative record.  *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1293 (11th Cir. 2005) (While it is true that the district court could have resolved the plaintiffs' § 502(a)(1)(B) [ERISA] claim solely by reference to the plan documents, the plaintiffs' breach of fiduciary duty theory justified additional discovery into whether Mass Mutual intentionally defrauded or misled them and thus breached the fiduciary "duty of loyalty ... codified in section 404(a)(1) of ERISA."); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision").  Nonetheless, the ultimate issue in the case is the same under Counts I and II, whether or not the Plan Administrator, after terminating the plans, improperly determined the discount rate for the purpose of calculating the amounts it owed to plan participants and other class members.

Moreover, the ultimate remedy at stake for both Count I and Count II is the same:  declaratory relief entitling the class members to larger payments.  "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims" under § 502(a)(1)(B) providing participants  and beneficiaries the right to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights

---

[7] In connection with their claim in Count I, Plaintiffs pursued and the Court permitted discovery relating to the formation of the plans and related trusts, the 2012 amendments to the plans, and the selection of the discount rate.

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Varity Corp.*, 516 U.S. at 512.  And Section 502(a)(2)&(3) of ERISA authorizes plan participants to seek "appropriate relief" as to a fiduciary who deviates from the responsibilities imposed by ERISA and to "to enjoin any act or practice which violates any provisions of this title or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this title or the terms of the plan." *Woods*, 396 F. Supp. 2d at 1360.

Courts have consistently required that a plaintiff pursuing § 502(a)(2) relief do so on behalf of the plan itself, and not on behalf of an individual recipient or recipients. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985); *Woods*, 396 F. Supp. 2d at 1360-61.  But plan participants are not required to demonstrate that every participant in the plan was affected by the challenged breach of fiduciary duty, and would therefore directly benefit from any potential recovery, before seeking redress under ERISA's remedial scheme. *Woods*, 396 F. Supp. 2d at 1361-62 (holding that although the statutory language of ERISA ensures that "any claims for fiduciary breach would seek to enrich the plan, rather than an individual participant . . . it does not purport to limit suits to circumstances where the recovery would necessarily and without exception inure to the benefit of all plan participants"); *In re Schering–Plough Corp. Erisa Litig.*, 420 F.3d 231, 235 (3d Cir. 2005) ("The fiduciary's liability [under § 502(a)(2)] is not limited to plan 'losses that will ultimately redound to the benefit of all

27

participants.'"); *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995) (holding that subset of plan participants can sue for breach of fiduciary duty because, inter alia, "the ruling that plaintiffs seek would benefit the Plan as a whole and would foreclose any subsequent litigation because it would cure any harm that the Plan suffered"); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 912–13 (E.D. Mich. 2004) (rejecting defendants' argument that plaintiffs could not bring suit under § 502(a)(2) because, although ostensibly bringing suit on behalf of the plan, recovery would benefit only a subset of individual participants' accounts).

Thus, because the claims are substantially intertwined and the ultimate issue and actual remedy sought are the same - litigating these issues separately would make little sense.

The subclass for Count I is defined as:

All participants, former participants, beneficiaries and spouses or eligible spouses as defined in the NCR Senior Executive Retirement, Death and Disability Plan, and all participants, former participants, beneficiaries and spouses or former spouses as defined in the Retirement Plan for Officers of NCR who were participants in the plan at least one year prior to September 13, 1991 and were participants and active employees at least through January 1, 1995.

As discussed herein, this subclass satisfies Rule 23, and the Court has discretion to *sua sponte* designate a subclass for prosecution of Count I. If the Court orders declaratory relief for the claims in Count I, this subclass will make it clear which participants that relief applies to.

The subclass defined by the Court satisfies the requirements of Rule 23. First, Defendant reported that 54 participants in SERP received lump sum

payments, satisfying Rule 23(a)'s numerosity requirement.  Even without including the number of participants in the Plan for Officers who would be eligible for the trust and trustee protection, it is clear that the subclass satisfies the numerosity requirement in having at least 54 members. For the same reason, the subclass is clearly ascertainable given the concrete criteria for inclusion in it.

The subclass also satisfies the commonality and typicality requirements. The common question is whether the amendments eliminating the trust and trustee and changing the standard of review "adversely effected" the subclass members' accrued benefits in breach of the plans.  The named Plaintiffs' claims are typical of the claims of the class members because they were all protected by the trust and trustee provisions, and all lost the trust and trustee protections with the same amendments for the same reasons.  And, as each of the named Plaintiffs were participants in plans[8] containing the trustee provisions and no conflicts have been identified, the subclass also satisfies the adequacy of representation requirement.

And the subclass is appropriately certified under Rule 23(b)(2). In eliminating the trust and trustee, Defendant treated all subclass members the same.  The declaratory relief sought by Plaintiffs in declaring that action a breach of the plans would be appropriate for all subclass members.

---

[8] Or in Plaintiff Giering's case, she was the spouse of a participant in one of the protected plans.

### D.    Certification of the Claims in Count III

The Court next turns to Count III.  There, Plaintiffs claim Defendant violated the plans by improperly interpreting "eligible spouse" and "spouse" to exclude spouses who were married to the participants when the plan benefits commenced but divorced the participants before Defendant terminated the plans. (Am. Compl. ¶¶ 108-113.)   Defendant argues the claims in Count III are not suitable for class treatment.  The Court agrees that  this claim is not appropriate for certification of the class because it does not – at least at this time – appear to satisfy the numerosity requirement of Rule 23(a).

Defendant relies on the declaration of Patrick R. Carroll, NCR's Vice President of Total Rewards since 2010.  (*See* Carroll Decl., Doc. 55-1 ¶ 2.)  In his declaration, Carroll attests that of the participants who received lump sum payments, only two "have former spouses who might (assuming they could prove their entitlement to any benefit payment at all) receive an increased benefit if the Court ordered that lump sum payments be calculated using a different discount rate." (Carrol Decl., Doc. 55-1 ¶ 4.)   If that assertion is correct, and only two former spouses were denied benefits because of this interpretation, then clearly numerosity cannot be satisfied as to a subclass of similarly situated former spouses.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (noting there is no fixed numerosity requirement, but concluding that a class of less than twenty or so members is inappropriate for certification).  That being said, Carroll's declaration has significant flaws.  It is light on detail, and says

30

nothing about how Carroll determined that there were only two former spouses denied benefits, nor does it attach any documentation to substantiate Defendant's position.

Plaintiffs acknowledge in their Reply the possibility that only two former spouses were denied benefits based on Defendant's interpretation of the "eligible spouse" plan language. Assuming this is so, Plaintiffs suggest adding Plaintiff Quick's ex-wife to join as a named plaintiff along with Plaintiff Giering for adjudication of their individual claims. Under the present circumstances, the Court will **GRANT** Plaintiffs leave to either (1) amend their Complaint to add Quick's former spouse to pursue claims as an eligible spouse, or (2) move to amend this Order to create a subclass of former spouses as appropriate. *See* Fed. R. Civ. P. 23(c)(1)(C) (allowing courts to amend or alter the class definition "before final judgment").

To facilitate a potential amendment, the Court **ORDERS** Defendant to produce to Plaintiffs information and documents necessary to ascertain the number of potential former spouses who may have been entitled to benefits upon Defendant's termination of the plans (including any information relied on by Mr. Carroll in support of his Declaration). Defendants are **DIRECTED** to produce this information within **TEN DAYS** of this Order. The Court further **GRANTS** Plaintiffs leave to conduct limited discovery, if they so choose, to determine

whether "there are *in fact* sufficiently numerous parties" to warrant certification of a subclass of former spouses under Rule 23.  *Wal-Mart*, 564 U.S. at 350.[9]

## III.   CONCLUSION

For the above reasons, the Court finds that both the class and subclass as defined in this Order satisfy the requirements of Rule 23(a) and 23(b)(2). Accordingly, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion for Class Certification [Doc. 44].   The Court certifies a class for Count II as follows:

> All participants, former participants, beneficiaries and spouses or eligible spouses, as defined in either (a) the NCR Senior Executive Retirement, Death and Disability Plan, (b) the Retirement Plan for Officers of NCR, (c) the NCR Nonqualified Excess Plan, (d) the NCR Mid-Career Hire Supplemental Pension Plan, or (e) the NCR Supplemental Pension Plan for AT&T Transfers who received or were entitled to receive lump sum payments from NCR as a result of the termination of NCR's nonqualified plans.

The Court further certifies a subclass to adjudicate the claims in Count I as follows:

> All participants, former participants, beneficiaries and spouses or eligible spouses as defined in the NCR Senior Executive Retirement, Death and Disability Plan, and all participants, former participants, beneficiaries and spouses or former spouses as defined in the Retirement Plan for Officers of NCR who were participants in the plan at least one year prior to September 13, 1991 and were participants and active employees at least through January 1, 1995.

Plaintiffs Hoak, Fano, Giering, and Quick are hereby appointed as class representatives for the class and subclass.   The Court appoints the law firms of

---

[9] This discovery period shall last for no more than **FORTY-FIVE** days unless otherwise approved by the Court.

Korein Tillery and Bondurant, Mixson & Elmore as class counsel for both the class and subclass.

The Court also **GRANTS** Plaintiffs leave to either (a) amend their Complaint to join Quick's former spouse so she and Giering may pursue the claims in Count III individually; or (b) conduct limited discovery to determine whether a class or subclass consisting of "eligible" spouses situated similarly to Giering will satisfy the requirements of Rule 23.   Plaintiffs are **DIRECTED** to notify Defendant and the Court within **FIFTEEN DAYS** of this Order whether they intend to amend their complaint to add Plaintiff Quick's former spouse or whether they intend to pursue limited discovery on the eligible spouse claim.  In the event Plaintiffs decide to seek certification of a subclass for Count III, the parties are **DIRECTED** to confer on a scheduling order for completing the limited discovery necessary and for briefing associated with a proposed amendment of the class and file the proposed plan within **TWENTY** days of this Order.

**IT IS SO ORDERED** this 27th day of September, 2017.


_Amy Totenberg_
**Amy Totenberg**
**United States District Judge**

33