IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOAN HOAK, ANTHONY FANO, and ALLAN QUICK, and PATRICIA GIERING, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLAN ADMINISTRATOR OF THE PLANS OF NCR CORPORATION<br><br>Defendant. | Civil Action No. 1:15-CV-03983-AT |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT OF SPOUSAL CLAIMS**

Defendant Plan Administrator of the Plans of NCR Corporation ("NCR") files this response in opposition to Plaintiffs Patricia Giering and Nancy Parin's Motion to Enforce Settlement Agreement for Spousal Claims [Doc. 172]. In addition to the legal authorities cited herein, NCR also relies upon the Declaration of Gregory F. Jacob, attached hereto as Exhibit 1.

## I. OVERVIEW

Plaintiffs' motion should be denied because there is no enforceable settlement agreement between the parties. As reflected in the correspondence discussing the potential settlement, counsel for NCR never assented to a complete

listing of settlement terms in any email, letter, or other document. Instead, before any settlement had been finalized, counsel for NCR advised counsel for Plaintiffs on March 19, 2020 that NCR did not "███████████████████████ ███████" and that NCR would advise "a███████████████████████ ██████." As with many companies impacted by the coronavirus pandemic, NCR was faced with weighing the possibility of layoffs, pay cuts, and other cost-cutting measures, which made the settlement unfeasible.

Contrary to Plaintiffs' arguments, this is not a situation where counsel reached an agreement on all material terms on behalf of their clients, but NCR is refusing to sign a settlement document. No such agreement exists. Instead, Plaintiffs rely on emails between counsel spanning almost one year that discuss various settlement terms at different points in time. The emails are amorphous and hardly satisfy the requirement under Georgia law of a full and complete agreement. At no point did counsel for Plaintiffs outline the material terms of a proposed settlement that was accepted by counsel for NCR. There is, quite literally, nothing for this Court to enforce. At a minimum, there are disputed issues of fact on the settlement terms purportedly reached by the parties, which precludes enforcement of any "agreement" on Plaintiffs' motion.

## II. SUMMARY OF SETTLEMENT DISCUSSIONS

As reflected in the correspondence between them, counsel for the parties discussed the possibility of settling the spousal claims beginning in the spring of 2019. (Declaration of Gregory F. Jacobs ("Jacobs Decl.") at ¶ 3.) In an email dated May 15, 2019, counsel for Plaintiffs outlined the terms of a potential settlement, including a calculation of the payments due to both Plaintiffs, ▮ ▮" (Declaration of Michael E. Klenov ("Klenov Decl."), Ex. A at 3-4 [Doc. 169-1].) With respect to the releases, counsel for Plaintiffs stated ▮ ▮ ▮." (*Id.* at 3.) Counsel for Plaintiffs corrected his calculations the following day in an email dated May 16, 2019. (*Id.*)

Unable to reach any agreement, the parties resumed settlement discussions in February 2020, when counsel for Plaintiffs sent updated spousal settlement figures with an "▮." (*Id.* at 2.) The email from counsel for Plaintiffs did not reflect the existence of any agreement, but instead inquired whether counsel for NCR "[▮]," in which event

3

counsel for Plaintiffs requested that counsel for NCR send "███████████ ███████████████████████████████" (*Id.*)

As discussions continued, the parties negotiated the terms under which ██ ████████████████████████████████████████ (*Id.*) Counsel for NCR outlined the conditions under which NCR would agree to ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.*) In closing the email, counsel for NCR inquired "████████████?" (*Id.*)

Counsel for Plaintiffs did not confirm any agreement, responding that ██ ████████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* at 1.) With that item outstanding, counsel for Plaintiffs sought to confirm whether the parties had an agreement on the settlement payments: "████████████████████████ ████████████" (*Id.*) Counsel for NCR did not provide the requested confirmation, stating "████████████████████████████████████████████████████." (*Id.*)

4

On March 18, 2020, counsel for NCR addressed further details regarding the payment terms—███████████████████████████████████████████ ███████████████████████████████████. (*Id.*, Ex. B at 8.) In response, counsel for Plaintiffs stated, "███████████████████████████████████ ██████████." (*Id.* at 7.) Counsel for Plaintiffs also inquired whether NCR "█ █████████████████████████████████████████████." (*Id.*)

Later that same day, counsel for Plaintiffs stated "█████████████████ ████████████████████████████████████████████████████ █████████████████████████████████." (*Id.* at 6) (emphasis added). Counsel for NCR did **not** confirm NCR's agreement as requested by counsel for Plaintiffs. Instead, the very next day, on March 19, 2020, counsel for NCR put the settlement discussions on hold due to the exigent circumstances created by the global pandemic:

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

(*Id.*)  At that time, counsel for Plaintiffs did not respond by taking the position that an enforceable agreement already existed between the parties based on the authority of NCR's counsel.  (Jacobs Decl. ¶ 12.)

Over the next several months, counsel for Plaintiffs sought to finalize a settlement agreement with NCR, suggesting that 4% interest was continuing to accrue in the interim.  (Klenov Decl., Ex. B at 1-5.)  Counsel for NCR, however, advised that NCR was "███████████████████████████████" brought on by the global pandemic.  (*Id.* at 2.)   When counsel for Plaintiffs for the first time indicated that Plaintiffs intended to file a motion to enforce, counsel for NCR stated his disagreement that any such enforceable settlement agreement existed. (*Id.* at 1.)  Plaintiffs filed their motion on September 25, 2020, over six months after counsel for NCR terminated the settlement discussions.

### III.    ARGUMENT AND CITATION TO AUTHORITIES

**A.    Standard of Review**

 "Under Georgia law, a motion to enforce a settlement agreement is evaluated under the standards similar to a motion for summary judgment." *Hollins v. Fulton Cty.*, No. 1:08-CV-00670-WSD, 2008 WL 11334201, at *1 (N.D. Ga. Oct. 9, 2008) (citing *Ballard v. Williams*, 223 Ga. App. 1, 1 (1996)). Thus, to "prevail, a party must show 'the court that the documents, affidavits, depositions

and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case." *Ballard*, 223 Ga. App. at 1 (quoting *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (1991), *abrogated by Robinson v. Kroger Co.*, 268 Ga. 735 (1997)).

"The party seeking judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact." *Cohen v. DeKalb Cty. Sch. Dist.*, No. 1:09-CV-1153-WSD, 2009 WL 4261161, at *4 (N.D. Ga. Nov. 25, 2009). The court must "view the evidence in a light most favorable to the nonmoving party . . . ." *DeRossett Enter., Inc. v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 728 (2005). "Summary enforcement of an alleged settlement is improper when there is a substantial factual dispute as to the terms of the settlement." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994).

**B.     The Absence of a Writing Precludes Enforcement of Any "Settlement"**

Plaintiffs' arguments are based on a false premise and miss the point entirely.  This is not a case in which it is undisputed that an attorney settled a case, but the client refuses to acknowledge the agreement.  The issue here is whether a binding agreement on all the terms of the settlement existed at all.  According to NCR's counsel, the parties "never arrived at a binding or enforceable settlement agreement," nor did he "ever assent to a complete and final listing of settlement

terms." (Jacobs Decl. ¶ 4.)  In addition, NCR's counsel disputes the terms of the purported settlement agreement as summarized by Plaintiffs' counsel. (*Id.* ¶ 11.) Where the existence of an agreement is controverted, Georgia law is well settled that a writing is required in order for an attorney to bind his client to a settlement:

> Ordinarily, for an attorney to bind his client to a settlement agreement where there is a dispute as to terms, **the agreement must be in writing**. . . . The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

*Brumbelow v. N. Propane Gas Co.*, 251 Ga. 674, 676 (1983) (emphasis added). As explained by the Georgia Supreme Court, "[t]his requirement of a writing goes to the certainty that an agreement exists and to the certainty of the terms of the agreement." *Id*.

Plaintiffs bear the burden of establishing the existence of a writing. *Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 882 (2005) (holding that "the proponent of the settlement must establish its existence in writing"). In this case, there is no writing—signed or unsigned—that memorializes the terms of the agreement between the parties. The emails between counsel contain only piecemeal discussion of proposed terms and do not memorialize the full and complete terms of the parties' purported settlement. (Klenov Decl., Exs. A

8

and B.) In his declaration, which attaches the emails, counsel for Plaintiffs outlines only the purported "framework" initially reached by the parties, without specifying the terms ultimately agreed upon by counsel. (Klenov Decl. ¶ 2.) In their brief, Plaintiffs list terms they are requesting this Court to enforce, but do not tie those terms to any evidence that NCR's counsel ever assented to them as a complete and final settlement. (*See* Pl. Br. at 8-9.)

The absence of any writing establishing the parties' "agreement" is dispositive of Plaintiffs' motion and precludes enforcement. In *LeCroy v. Massey*, 185 Ga. App. 828 (1988), the Court of Appeals affirmed the trial court's ruling that there was no enforceable agreement as a matter of law. In that case, three of the six attorneys involved in the settlement discussions swore that there was a settlement agreement, while the other three attorneys swore that there was not. *LeCroy*, 185 Ga. App. at 829. In so ruling, the Court of Appeals followed *Brumbelow* and reasoned as follows:

> . . . [W]here the very existence of the agreement is disputed, it may only be established by a writing. There is no writing establishing the agreement asserted by appellants, so the trial court was correct in granting summary judgment to appellees.

*Id*. Similarly, in *Walls v. Walls*, 260 Ga. App. 673 (2003), the Court of Appeals reversed the trial court's order enforcing a settlement. As in this case, the attorney

swore that no agreement had been reached on all the terms of the settlement. *Walls*, 260 Ga. App. at 675. Because "the existence of the agreement is hotly contested" and "no writings establish the agreement," the Court of Appeals held that "the agreement cannot be enforced." *Id*.

The cases cited in Plaintiffs' brief are inapposite because the existence and terms of the settlement were not in dispute. In *Johnson v. DeKalb County*, 314 Ga. App. 790 (2012), the attorney sent an email "which unequivocally accepted DeKalb County's original offer" and "memorialized the parties' agreement to settle." *Johnson*, 314 Ga. App. at 794. The Court of Appeals further determined that "the essential elements of the agreement were clear." *Id*. Similarly, in *Mason v. Rabun West, Inc.*, 174 Ga. App. 462 (1985), the appellants "admit[ted] that on their behalf their former attorney accepted an oral offer of settlement" and moreover did "not dispute the terms of the accepted offer." *Mason*, 174 Ga. App. at 463. Unlike the facts in *Johnson* and *Mason*, counsel for NCR did not accept any offer of settlement, and the terms of the purported settlement are disputed and not confirmed in any writing. (Jacobs Decl. ¶¶ 4, 11.)

C.     **The Parties Never Entered Into Any Enforceable Agreement.**

Even if the Court were to look past the requirement of a writing, there can be no enforceable settlement because the parties never entered into an agreement that

satisfies all the requirements of contract formation. Under Georgia law, an agreement to settle "a pending lawsuit must meet the same requisites of formation and enforceability as any other contract." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). In the absence of a formal written agreement, an alleged agreement will only be binding if it is "clear that it is full and complete, covers all issues, and is understood by all litigants concerned." *Tekin v. Whiddon*, 233 Ga. App. 645, 648 (1998). "Absent such mutual agreement, there is no enforceable contract as between the parties." *Pourreza*, 273 Ga. App. at 882.

"[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." *S. Med. Corp. v. Liberty Mut. Ins. Co.*, 216 Ga. App. 289, 291(1995). Accordingly, for a contact to be enforceable, there must be a "definite offer" and a "complete acceptance." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). The "offer must be accepted unequivocally and without variance of any sort." *Frickey v. Jones*, 280 Ga. 573, 574 (2006). "An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer." *Id.*

As reflected in the emails between counsel, there was no mutual assent on the final settlement terms. Counsel for Plaintiffs never made a "definite offer" that

outlined the proposed settlement terms. Likewise, counsel for NCR never made any "complete" or "unequivocal" acceptance. Instead, the emails between counsel discussed the proposed settlement terms in piecemeal fashion over the span of almost one year. (Klenov Decl., Exs. A and B.) None of the emails contain the essential terms of the contract sufficient to create a binding settlement agreement. *See Stephens v. Castano-Castano*, 346 Ga. App. 284, 289 (holding that, where counteroffer was "indefinite and omitted an essential term," it could "not result in an enforceable settlement agreement between the parties"), *reconsideration denied* (June 14, 2018), *cert. denied* (Feb. 18, 2019).

Even when the emails between counsel are examined collectively, at no point did counsel for NCR confirm "complete" or "unequivocal" acceptance of the settlement amount, payment date, or scope of release proposed by Plaintiffs (among other material terms). In his email dated March 18, 2020, counsel for Plaintiffs acknowledged that counsel for NCR never agreed to the settlement amount. (Klenov Decl., Ex. B at 6) ("I don't think you ever confirmed.") With respect to the payment date, although counsel for Plaintiffs "assumed" a payment date of April 1, 2020 (Klenov Decl. ¶ 3, Ex. A at 2), counsel for NCR never agreed to any payment date and further advised counsel for Plaintiffs on March 19, 2020 that NCR could not agree to any payment date due to the exigent circumstances

created by the global pandemic.  (*Id.*, Ex. B. at 6.)  The emails that discuss the scope of the release—first by Plaintiffs' counsel on May 15, 2019 and then by NCR's counsel nearly ten months later, on February 13, 2020—also do not reflect any offer or acceptance.  (*Id.*, Ex. B at 1, 3.)

In their motion, Plaintiffs are unable to point to any email that reflects mutual assent on final settlement terms.  Instead, Plaintiffs rely solely on the emails by counsel for NCR, dated March 19, 2020 and May 11, 2020, that purportedly confirm the existence of an "agreement" to settlement terms.  (Pls.' Resp. at 7.)  Those same emails, however, expressly disclaim the existence of any such agreement and therefore cannot establish any settlement.  (Klenov Decl., Ex. B at 6) (". . . [W]hile as you now they agree to all the settlement terms, *they just don't have the capacity to ink this* [*in*] *the present situation*." (emphasis added)); (*Id.* at 3) ("They are agreeable to the terms and understand there is accruing interest, *but just aren't in a position to proceed under the current circumstances*." (emphasis added))  Therefore, rather than accepting any offer, the emails by counsel for NCR state the exact opposing by disclaiming the existence of any settlement.

At a minimum, the record reflects disputed issues of fact on whether the parties reached mutual agreement on settlement terms.  (Jacobs Decl. ¶¶ 4, 11.)

13

Under Georgia law, a contract "cannot be enforced if its terms are incomplete, vague, indefinite or uncertain." *Massih v. Mulling*, 271 Ga. App. 685, 687 (2005). As such, a court will enforce a contract only where parties have "entered into a definite, certain, and unambiguous agreement to settle." *DeRossett*, 275 Ga. App. at 729. A "court will not carry a contract into effect where it is left to ascertain the intention of the parties by mere guess or conjecture." *White & Assocs., Inc. v. Decker & Hallman, P.C.*, 4203 Ga. App. 14, 15 (1992).

### D. The Parties Contemplated that a Settlement Would Be Binding Only Upon Execution of a Written Agreement.

In the event this Court were to overlook the absence of a writing and further determine that the parties reached a mutual agreement on all terms, there can be no enforceable settlement absent the execution of a formal settlement document as contemplated by the parties. Contrary to the arguments in Plaintiffs' brief, apparent authority "is only indicated when the principal's conduct leads a third party reasonably to believe the agent has authority to act for the principal." *Omni Builders Risk, Inc. v. Bennett*, 313 Ga. App. 358, 262 (2011). "Where there were no manifestations of authority by the principal to a third party, apparent authority is not in issue." *Id.* (quoting *Morris v. Williams*, 214 Ga. App. 526, 527 (1994)). In *Omni Builders*, for example, the Georgia Court of Appeals found no enforceable settlement even though the attorney signed the settlement document, since the

parties clearly contemplated signatures by the parties.

In this case, there is no evidence in the record that NCR ever indicated through words or conduct that counsel for NCR was authorized to bind NCR to a settlement absent a written agreement executed by the parties. Nor did counsel for NCR ever suggest to counsel for Plaintiffs that his emails would be sufficient to bind NCR to a settlement. (Jacobs Decl. ¶ 5.) In fact, in his March 19, 2020 email, counsel for NCR again communicated that there would be no settlement until NCR had "the capacity to ink" the terms in a formal document. (Klenov Decl., Ex. B at 6; Jacobs Decl. ¶ 10.)

Conversely, there is no evidence that counsel for Plaintiffs was operating under the misimpression that emails would be sufficient to bind NCR, or that a written agreement executed by the parties would not be necessary to consummate a binding and enforceable settlement. To the contrary, the emails from Plaintiffs' counsel confirm that he likewise contemplated the execution of a formal settlement document as a precondition to a binding agreement. (*See*, *e.g.*, Klenov Decl., Ex. A at 2 (requesting that counsel for NCR "please forward proposed settlement agreements for each of the spouses")); (*id.*, Ex. B at 7 (stating "assumption" that NCR "is still going to prepare the first draft of the settlement agreement")).

After counsel for NCR communicated on March 19, 2020 that NCR could no longer proceed with the settlement, counsel for Plaintiffs did not take the position that there already existed a binding settlement. (Jacobs Decl. ¶ 12.) Instead, as reflected in the emails that followed, counsel for Plaintiffs clearly understood that the parties needed to execute formal settlement documents in order to be bound. (*See*, *e.g.*, Klenov Decl., Ex. B at 6 (requesting an update on "efforts to paper the spousal settlement")); (*id* at 4 (following up on the "spousal settlement agreement")); (*id*. at 3 (inquiring whether NCR was "in a better position to finally ink the deal")); (*id.* at 2 (further inquiring whether NCR was "in a position to finally ink and perform on the deal")).

At a minimum, if the Court even reaches the issue of apparent authority, factual disputes preclude enforcement of any purported settlement agreement on Plaintiffs' motion. Plaintiffs failed to meet their burden that they reasonably believed counsel for NCR was authorized to bind NCR through his emails without a formal settlement agreement executed by the parties.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion to Enforce Settlement Agreement of Spousal Claims.

This 16th day of October, 20202.

/s/*Rachel F. Gage*
Jeremy U. Littlefield
GA Bar No. 141539
Rachel F. Gage
GA Bar No. 547982
ROBBINS ROSS ALLOY BELINFANTE
  LITTLEFIELD LLC
500 14th St. NW
Atlanta, GA 30318
Phone: (678)701-9381
Fax: (404) 856-3250
jlittlefield@robbinsfirm.com
rgage@robbinsfirm.com

Shannon M. Barrett
D.C. Bar No. 476866
*Pro Hac Vice*
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
Telephone: 202-383-5300
Facsimile: 202-383-5414
sbarrett@omm.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE SETTLMENT AGREEMENT FOR SPOUSAL CLAIMS** with the Clerk of Court using the CM/ECF system which will send e-mail notification of such filing to counsel of record.

This 16th day of October, 2020.

*/s/ Rachel F. Gage*
Rachel F. Gage